# DELAMATER *v.* SOUTH·DAKOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH DAKOTA.

No. 149. Argued January 10, 11, 1907.—Decided March 11, 1907.

The general power of the States to control and regulate, within their borders, the business of dealing in, or soliciting orders for, the purchase of intoxicating liquors is beyond question.

The purpose of the Wilson act, 26 Stat. 713, as a regulation of interstate commerce was to allow the States to exert ampler power as to intoxicating liquors when the subject of such commerce than could have been exercised before the enactment of that statute, which enabled the States to extend their authority as to such liquor shipped from other States before it became commingled with the mass of other property in the State by a sale in the original package.

Since the enactment of the Wilson law, which expressly provides that intoxicating liquors coming into a State should be as completely under control of the State as though manufactured therein, the owner of intoxicating liquor in one State cannot, under the commerce clause of the Constitution, go himself or send his agent into another State and, in defiance of its laws, carry on the business of soliciting proposals for the purchase of such liquors.

Although a State may not forbid a resident therein from ordering for his own use intoxicating liquor from another State it may forbid the carrying on within its borders of the business of soliciting orders for such liquor although such orders may only contemplate a contract resulting from final acceptance in another State. *Vance v. W. A. Vandercook Co.*, 170 U. S. 438, distinguished.

The law of South Dakota imposing an annual license charged on travelling salesmen selling, offering for sale, or soliciting orders for intoxicating liquors in quantities of less than five gallons is not unconstitutional because repugnant to the commerce clause of the Constitution of the United States.

The highest court of South Dakota having held that the act imposing a license on travelling salesmen soliciting orders for intoxicating liquors is a police regulation and not a taxing act, it is within the purview of, and not in conflict with, the Wilson act. *Pabst Brewing Co. v. Crenshaw*, 198 U. S. 17, followed.

104 N. W. Rep. 539, affirmed.

THE facts are stated in the opinion.

*Mr. Herbert Jackson* for plaintiff in error:

Liquor is a legitimate subject of interstate commerce. *Leisy* v. *Hardin*, 135 U. S. 100, 110; *In re Rahrer*, 140 U. S. 545; *Rhodes* v. *Iowa*, 170 U. S. 412, 414; *Bowman* v. *Railway Co.*, 125 U. S. 465, and the statute complained of is a direct interference with interstate commerce. *Bowman* v. *Chicago & N. W. Ry. Co.*, 125 U. S. 465–524; *Rhodes* v. *State of Iowa*, 170 U. S. 412–438. And see *American Express Co.* v. *Iowa*, 196 U. S. 133, 146, holding that liquor shipped C. O. D. from one State to another was interstate commerce; that the title of the goods passed when same was delivered to the carrier, and that any interference by the state authorities with the merchandise was illegal, unless the goods were offered for resale.

The act of the legislature of the State of South Dakota was not a regulation in the interest of the morals of the community—its only purpose being to license and raise revenue. It is not a police regulation.

The case does not come within the rule laid down in *Austin* v. *Tennessee*, 179 U. S. 343, 388.

*Mr. S. M. Howard* and *Mr. Aubrey Lawrence*, with whom *Mr. Philo Hall*, Attorney General of the State of South Dakota, was on the brief, for defendant in error:

The law is a license law and not a tax law.

The mere fact that a law of this character results in bringing a certain revenue to the State does not necessarily stamp such an act as a revenue or tax law; the real test is as to whether or not the purpose of the act was to secure revenue or regulate and control. 17 Ency. of Law, 2d ed., p. 223, and citations; 21 Ency. of Law, 2d ed., pp. 774, 775.

The interpretation of the South Dakota courts upon the act, which will be considered by this court, is to the same effect. *State* v. *Beuchler*, 10 S. Dak. 156.

The title of the act is "An act to provide for the licensing, restricting and regulation of the manufacture and sale of

spirituous and intoxicating liquors." Session Acts, South Dakota, 1901, 246.

The law is one within the police powers of the State, and thus subject to different rules than laws concerning the ordinary goods of commerce. Freund on Police Powers, sec. 10, p. 7.

Regardless of the Wilson act, which more fully placed intoxicating liquors within the police power of the State, this court for many years sustained the doctrine laid down in the *License Cases*, 5 How. 523; and see also *Sherlock* v. *Alling*, 93 U. S. 99; *Foster* v. *Kansas*, 112 U. S. 201.

As the State has the constitutional power to prohibit even the manufacture and sale of intoxicating liquors, it must undoubtedly have the power to regulate and restrict the sale of intoxicating liquors, and as a part of that power has the undoubted constitutional right to regulate and control any act in furtherance of such sale, or any offer of sale completed within the state boundaries which would lead up to the sale, which is restricted and controlled by the legislative act. This is not an interference with the interstate commerce clause and cannot be said to act before the goods come within the jurisdiction of the State, because under the facts in the case at bar the person who commits the act in question has voluntarily appeared within the boundaries of the State and submitted himself to the laws of that State, and has voluntarily chosen to come within the State to engage in the business which is restricted and controlled under the constitutional authority of the State.

The act in question does not conflict with the interstate commerce law.

The acts involved are committed by a person within the jurisdiction of the State, who voluntarily engages within the State in an occupation prohibited under the police power of the State.

The taking of the order by the plaintiff for intoxicating liquors was a part of the contract of sale. *Lang* v. *Lynch*

(N. H.) 4 L. R. A. 831. Drummers are mere solicitors of orders for others and differ in no respect from clerks or salesmen except that they are ambulatory in their operations and do not usually carry or deliver the goods sold. *Ex parte Taylor*, 58 Mississippi, 478. The residence of the person who pursues the business is immaterial. *Bates v. Mobile*, 46 Alabama, 158; *Mason v. Cumberland*, 92 Maryland, 451; *Washington v. McGeorge*, 146 Pa. St. 248. See also *Ficklen v. Taxing District of Shelby County*, 145 U. S. 1.

Mr. JUSTICE WHITE delivered the opinion of the court.

A firm established in St. Paul, Minnesota, which was engaged in dealing in intoxicating liquors, employed Delamater, the plaintiff in error, as a traveling salesman. As such salesman Delamater, in the State of South Dakota, carried on the business of soliciting orders from residents of that State for the purchase, from the firm in St. Paul, of intoxicating liquors in quantities of less than five gallons. The course of dealing was this: The orders were procured in the form of proposals to buy, and when accepted by the firm the liquor was shipped from St. Paul to the persons in South Dakota who made the proposals, at their risk and cost, on sixty days' credit. At the time Delamater engaged in South Dakota in the business just stated the law of that State imposed an annual license charge upon "the business of selling or offering for sale" intoxicating liquors within the State, "by any traveling salesman who solicits orders by the jug or bottle in lots less than five gallons." A violation of the statute was made a misdemeanor punishable by fine or imprisonment, or both, in the discretion of the court. Delamater, not having paid the license charge, was prosecuted under the statute. At the trial, although the uncontradicted proof established the carrying on of business within the State, as above mentioned, Delamater requested a binding instruction to the jury in his favor, on the ground that the statute did not apply,

and if it did, that it was void because repugnant to the commerce clause of the Constitution of the United States. Exception was taken to the refusal to give the instruction. The Federal ground was reiterated in motions to arrest and for a new trial, and the Supreme Court of the State, to which the cause was taken, in affirming the judgment of conviction expressly considered and disposed of such Federal ground. 104 N. W. Rep. 537.

All the assignments of error involve the proposition that the state statute, as construed and applied by the court below, is repugnant to the commerce clause of the Constitution. It is manifest, as the subject dealt with is intoxicating liquors, that the decision of the cause does not require us to determine whether the restraints which the statute imposes would be a direct burden on interstate commerce if generally applied to subjects of such commerce, but only to decide whether such restraints are a direct burden on interstate commerce in intoxicating liquors as regulated by Congress in the act commonly known as the Wilson act. 26 Stat. L. 313, chap. 728. For this reason we at once put out of view decisions of this court, which are referred to in argument and which are noted in the margin,[1] because they concerned only the power of a State to deal with articles of interstate commerce other than intoxicating liquors, or which, if concerning intoxicating liquors, related to controversies originating before the enactment of the Wilson law.

The general power of the States to control and regulate the business of dealing in or soliciting proposals within their borders for the purchase of intoxicating liquors is beyond question. With the existence of this general power we are

---

[1] Robbins v. Shelby Taxing District, 120 U. S. 489; Corson v. Maryland, 120 U. S. 502; Asher v. Texas, 128 U. S. 129; Stoutenburg v. Hennick, 129 U. S. 141; Leisy v. Hardin, 135 U. S. 100; Lyng v. Michigan, 135 U. S. 161; Crutcher v. Kentucky, 141 U. S. 47; Brennun v. Titusville, 153 U. S. 289; Caldwell v. North Carolina, 187 U. S. 622; Norfolk & W. R. Co. v. Sims, 191 U. S. 441; Rearick v. Pennsylvania, 203 U. S. 507.

not, therefore, concerned. We are hence called upon only
to consider whether the general power of the State to control
and regulate the liquor traffic and the business of dealing
or soliciting proposals for the dealing in the same within the
State was inoperative as to the particular dealings here in
question, because they were interstate commerce, and there-
fore could not be subjected to the sway of the state statute
without causing that statute to be repugnant to the com-
merce clause of the Constitution of the United States.

It is well at once to give the text of the Wilson act, which
is as follows (26 Stat. 713, c. 728):

"That all fermented, distilled, or other intoxicating liquors
or liquids transported into any State or Territory or remain-
ing therein for use, consumption, sale or storage therein,
shall upon arrival in such State or Territory be subject to the
operation and effect of the laws of such State or Territory
enacted in the exercise of its police powers, to the same ex-
tent and in the same manner as though such liquids or liquors
had been produced in such State or Territory, and shall not
be exempt therefrom by reason of being introduced therein
in original packages or otherwise."

It is settled by a line of decisions of this court, noted in the
margin,[1] that the purpose of the Wilson act, as a regulation
by Congress of interstate commerce, was to allow the States,
as to intoxicating liquors, when the subject of such commerce,
to exert ampler power than could have been exercised before
the enactment of the statute. In other words, that Congress,
sedulous to prevent its exclusive right to regulate commerce
from interfering with the power of the States over intoxicating
liquor, by the Wilson act adopted a special rule enabling the
States to extend their authority as to such liquor shipped

---

[1] In re Rahrer, 140 U. S. 545; Rhodes v. Iowa, 170 U. S. 412; Vance v.
W. A. Vandercook Co., 170 U. S. 438; American Express Co. v. Iowa, 196
U. S. 133; Adams Express Co. v. Iowa, 196 U. S. 147; Pabst Brewing Co.
v. Crenshaw, 198 U. S. 17; Foppiano v. Speed, 199 U. S. 501; Heyman v.
Southern Ry. Co., 203 U. S. 270.

from other States before it became commingled with the mass of other property in the State by a sale in the original package.

The proposition relied upon, therefore, when considered in the light of the Wilson act, reduces itself to this: Albeit the State of South Dakota had power within its territory to prevent the sale of intoxicating liquors, even when shipped into that State from other States, yet South Dakota was wanting in authority to prevent or regulate the carrying on within its borders of the business of soliciting proposals for the purchase of liquors, because the proposals were to be consummated outside of the State, and the liquors to which they related were also outside the State. This, however, but comes to this, that the power existed to prevent sales of liquor, even when brought in from without the State, and yet there was no authority to prevent or regulate the carrying on the accessory business of soliciting orders within the State. Aside, however, from the anomalous situation to which the proposition thus conduces, we think to maintain it would be repugnant to the plain spirit of the Wilson act. That act, as we have seen, manifested the conviction of Congress that control by the States over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject. When, then, for the carrying out of this purpose the regulation expressly provided that intoxicating liquors coming into a State should be as completely under the control of a State as if the liquor had been manufactured therein, it would be, we think, a disregard of the purposes of Congress to hold that the owner of intoxicating liquors in one State can, by virtue of the commerce clause, go himself or send his agent into such other State, there in defiance of the law of the State, to carry on the business of soliciting proposals for the purchase of intoxicating liquors.

Passing from these general considerations let us briefly more particularly notice some of the arguments relied upon.

As we have stated, decisions of this court interpreting the

Wilson act have held that that law did not authorize state power to attach to liquor shipped from one State into another before its arrival and delivery within the State to which destined. From this it is insisted, as none of the liquor covered by the proposals in this case had arrived and been delivered within South Dakota, the power of the State did not attach to the carrying on of the business of soliciting proposals, for until 'the liquor arrived in the State there was nothing on which the state authority could operate. But this is simply to misapprehend and misapply the cases and to misconceive the nature of the act done in the carrying on the business of soliciting proposals. The rulings in the previous cases to the effect that, under the Wilson act, state authority did not extend over liquor shipped from one State into another until arrival and delivery to the consignee at the point of destination, were but a recognition of the fact that Congress did not intend, in adopting the Wilson act, even if it lawfully could have done so, to authorize one State to exert its authority in another State by preventing the delivery of liquor embraced by transactions made in such other State. The proposition here relied on is widely different, since it is that, despite the Wilson act, the State of South Dakota was without power to regulate or control the business carried on in South Dakota of soliciting proposals for the purchase of liquors, because the proposals related to liquor situated in another State. But the business of soliciting proposals in South Dakota was one which that State had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped. Of course if the owner of the liquor in another State had a right to ship the same into South Dakota as an article of interstate commerce, and, as such, there sell the same in the original packages, irrespective of the laws of South Dakota, it would follow that the right to carry on the business of soliciting in South Dakota was an incident to the right to ship and sell, which could not be bur-

dened without directly affecting interstate commerce. But, as by the Wilson act, the power of South Dakota attached to intoxicating liquors, when shipped into that State from another State after delivery but before the sale in the original package, so as to authorize South Dakota to regulate or forbid such sale, it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though such liquors were situated in other States, cannot be held to be repugnant to the commerce clause of the Constitution, because directly or indirectly burdening the right to sell in South Dakota, a right which by virtue of the Wilson act did not exist.

2. Nor is there merit in the arguments based on the ruling in *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438. The controversies in that case and the matters therein decided were recapitulated in *Pabst Brewing Co.* v. *Crenshaw*, 198 U. S. 17, as follows (p. 25):

"In *Vance* v. *W. A. Vandercook Co.*, 170 U. S. 438, the operation of a liquor law of South Carolina was considered. By the act in question the State of South Carolina took exclusive charge of the sale of liquor within the State, appointed its agents to sell the same, and empowered them to purchase the liquor which was to be brought into the State for sale. The fact was that by the act in question the State of South Carolina, instead of forbidding the traffic in liquor, authorized it, and engaged in the liquor business for its own account, using it as a source of revenue. The act, in addition, affixed prerequisite conditions to the shipment into South Carolina from other States of liquor to a consumer who had purchased it for his own use, and not for sale. Considering the Wilson act and the previous decisions applying it, in so far as it took charge in behalf of the State of the sale of liquor within the State, and made such sale a source of revenue, was not an interference with interstate commerce. In so far, however, as the state law imposed burdens on the right to ship liquor from another State to a resident of South Carolina, intended

for his own use, and not for sale within the State, the law was
held to be repugnant to the Constitution, because the Wilson
act, whilst it delegated to the State plenary power to regu-
late the sale of liquors in South Carolina shipped into the
State from other States, did not recognize the right of a State
to prevent an individual from ordering liquors from outside
of the State of his residence for his own consumption, and not
for sale."

It having been thus settled that under the Wilson act a
resident of one State had the right to contract for liquors in
another State and receive the liquors in the State of his resi-
dence for his own use, therefore, it is insisted the agent or
traveling salesman of a non-resident dealer in intoxicating
liquors had the right to go into South Dakota and there carry
on the business of soliciting from residents of that State.
orders for liquor to be consummated by acceptance of the
proposals by the non-resident dealer. The premise is sound,
but the error lies in the deduction, since it ignores the broad
distinction between the want of power of a State to prevent
a resident from ordering from another State liquor for his
own use and the plenary authority of a State to forbid the
carrying on within its borders of the business of soliciting
orders for intoxicating liquors situated in another State,
even although such orders may only contemplate a contract
to result from final acceptance in the State where the liquor
is situated. The distinction between the two is not only
obvious, but has been foreclosed by a previous decision of
this court. That a State may regulate and forbid the making
within its borders of insurance contracts with its citizens by,
foreign insurance companies or their agents is certain. *Hoo-*
*per* v. *California,* 155 U. S. 648. But that this power to pro-
hibit does not extend to preventing a citizen of one State from
making a contract of insurance in another State is also settled.
*Allgeyer* v. *Louisiana,* 165 U. S. 578. In *Nutting* v. *Massachu-*
*setts,* 183 U. S. 553, the court was called upon to consider
these two subjects—that is, the power of the State on the one

hand to forbid the making within the State of contracts of insurance with unauthorized insurance companies and the right of the individual on his own behalf to make a contract with such insurance companies in another State as to property situate within the State of residence. The case was brought to this court to review a conviction of Nutting, a citizen of Massachusetts, for having negotiated insurance with a com-pany not authorized to do business in Massachusetts, contrary to the statutes of that State. Briefly, the facts were that Nutting, an insurance broker, solicited in Massachusetts a contract of insurance on property belonging to McKie situated in that State. The proposal was accepted outside of the State of Massachusetts and the policy also issued outside of that State. The contention of the plaintiff in error was that as the contract was consummated outside of Massachusetts, the conviction was repugnant to the Fourteenth Amendment, because the acts done did not fall within the general principle announced in *Hooper* v. *California, supra,* but were within the ruling in *Allgeyer* v. *Louisiana.* The conviction was affirmed not because the contract was consummated in Massa-chusetts, but upon the ground that the right of an individual to obtain insurance for himself outside of the State of his residence did not sanction the conduct of Nutting, as an insurance broker, in carrying on the business in Massachusetts of soliciting unauthorized insurance. After reviewing the Hooper and Allgeyer decisions and pointing out that there was no conflict between the two cases, the court said (p. 558):

"As was well said by the supreme judicial court of Massa-chusetts: 'While the legislature cannot impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would not have thought of making. It may prohibit, not only agents of the insurers, but also brokers, from soliciting or intermed-dling in such insurance, and for the same reasons.' 175 Massa-chusetts, 156; 55 N. E. Rep. 895."

The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the State in respect thereto. As we have seen, the right of the States to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce en..oodied in the Wilson act is absolutely applicable to liquor shipped from one State into another after delivery and before the sale in the original package. It follows that the authority of the States, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the States to forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors which otherwise the citizen of the State "would not have thought of making," must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor.

3. The contention that the law of South Dakota was a taxing law and not a police regulation, and therefore not within the purview of the Wilson act, is in conflict with the purpose of that law as interpreted by the Supreme Court of South Dakota. *State* v. *Beuchler,* 10 S. Dak. 156. Besides, the contention is foreclosed by the ruling of this court in *Pabst Brewing Co.* v. *Crenshaw, supra.*

*Affirmed.*

The CHIEF JUSTICE dissents.