# CHARLESTON.

## STATE v. MARKS.

Submitted March 2, 1909.    Decided April 20, 1909.

INTOXICATING LIQUORS—*Place of Sale.*

One who, as agent for a retailer liquor dealer licensed in one county, solicits and receives orders for his principal in another county for liquors, to be forwarded to his principal at the licensed place of business and there filled and shipped C. O. D. to the customer, and who does not deliver the goods' or receive the money for his principal, is not guilty of the offense of selling, offering or exposing for sale or soliciting and receiving orders for spirituous liquors, etc., as provided in section 1 of chapter 32 of the Code. (p. 525.)

Error to Circuit Court, Raleigh County.

J. L. Marks was convicted of a violation of the local option law, and brings error.

*Reversed.*

J. LEWIS BUMGARDNER, OSENTON & MCPEAK, HOLT & DUNCAN, and MCGINNIS & HATCHER, for plaintiff in error.

WM. G. CONLEY, Attorney General, for the State.

MILLER, PRESIDENT:

The defendant, J. L. Marks, was indicted in the circuit court of Raleigh county at the July term, 1905, thereof, charged with

unlawfully, without a state license therefor, selling, offering and exposing for sale and soliciting and receiving orders for spirit-uous liquors, wines, porter, ale, beer and drinks of like nature. The case was tried by agreement of parties, before the court in lieu of a jury, upon the following agreed state of facts:

"That the Fayette Liquor Company, a co-partnership, the members of which are J. P. Chapman and W. E. Deegans, trading under the firm name and style of the Fayette Liquor Company, has both wholesale and retail liquor dealers license, issued by the county court of Fayette county, to carry on its business as wholesale and retail liquor dealers at Beury, Fayette county, West Virginia, for the license year 1905.

"That the said firm employed the defendant, J. L. Marks, as its agent and traveling salesman to represent both the whole-sale and retail branches of its business, and to travel through Fayette, Raleigh, Nicholas, Logan and Wyoming counties, and solicit and receive orders for the sale of spirituous liquors, wines, porter, ale, beer and drinks of like nature, at wholesale and retail, to be shipped by express from the place of business of the said firm at Beury, Fayette county, West Virginia.

"That the defendant, J. L. Marks, acting as such agent and traveling salesman of said firm, the Fayette Liquor Company, did in the county of Raleigh on the 1st day of June, 1905, and during the period covered by the retail license aforesaid, in the course of his employment solicit and receive from James Cousins an order for one gallon of whiskey to be shipped in a jug by express C. O. D. from the Fayette Liquor Company at Beury, Fayette county, West Virginia, to the Adams Express office at Stanaford in Raleigh county, West Virginia, in the name of said James Cousins; that the said Fayette Liquor Company received the order, and filled a gallon jug with whiskey and de-livered the same to the Adams Express Company at Beury, Fay-ette county, West Virginia, addressed to the said James Cousins at Stanaford, Raleigh county, West Virginia; that the said James Cousins received from the express office at Stanaford, Raleigh county, West Virginia, the jug of whiskey aforesaid, ·and paid to the express agent the sum of $3.00, the price therefor and the express charges, and that the express agent at said place trans-mitted the sum of $2.50, the price of said liquor, to the Fayette Liquor Company at Beury, West Virginia.

"That the said J. L. Marks, had no authority from said company except to solicit and receive orders as aforesaid, which were sent to the said company by said Marks for their final ratification and approval, and to be shipped to the consignee as aforesaid; that the said Marks had no authority to collect any money or to deliver whiskey except in the manner aforesaid, and that he did not collect any money or deliver whiskey.

"That Raleigh county is a 'dry' county; that is, no licenses were issued in said county for the license years of 1904 and 1905 for the sale of spirituous liquors," &c.

There was a demurrer to the indictment, which was overruled, no grounds being assigned. The indictment was in the usual form in such cases. The point made here by the plaintiffs in error is that the indictment was bad for charging defendant with two separate and distinct offenses: namely, (a) selling liquor without a license, (b) soliciting and receiving orders for the sale of liquors without a license. The indictment is founded on section 1, chapter 32, Code 1906, which makes it unlawful for any person without a state license therefor to sell, offer or expose for sale and solicit or receive orders for the sale of spirituous liquors, wines, porter, ale, beer and drinks of like nature. By its disjunctive provisions, it would seem to make selling, offering and exposing for sale, and soliciting and receiving orders for spirituous liquors, each separate and distinct subjects for a state license. The law makes no such provision. The license imposed is for selling spirituous liquors, by section 87 at retail and by section 88 at wholesale. How would one acquire a license under this law, for instance, to offer or expose for sale? Is it not plain that the provision of section 1 referred to must be interpreted as if it read: "No person shall sell or offer or expose for sale, or solicit or receive orders for spirituous liquors, wines, porter, ale, beer and drinks of like nature, *without a state license to sell the same?*" If the person offending is armed with a state license to sell at wholesale or retail as provided by sections 87 and 88, may he not offer or expose for sale or solicit or receive orders for spirituous liquors, without offending against the law? We can see no escape from the conclusion that he can do so. The selling of the liquor is the thing which the statute intended to provide against; but one can neither offer or expose for sale nor solicit or receive orders without a license to sell. Such sale, it is true,

can not be effectuated without a violation of the law, unless it is made to be executed at the place where the sale is authorized. We think the indictment good, therefore, and that two separate offenses are not charged. *State* v. *Hall,* 26 W. Va. 236; *State* v. *Swift,* 35 W. Va. 543.

The only remaining question for consideration upon the agreed state of facts is: Is the defendant Marks guilty of any offense under the indictment for having solicited and received an order for one gallon of whiskey from James Cousins in Raleigh county, as agent and traveling salesman for the Fayette Liquor Company? It is agreed that this firm has a retail and a wholesale liquor license in Fayette county. These license laws are not prohibitory laws. They are revenue laws, enacted for the purpose of raising revenue for the support of the state. While it is permitted to the several counties and municipalities in which liquor may be sold to say whether or not they will suffer persons to establish licensed places of business therein, yet we must interpret these laws looking through the eye of a legislature at the purpose in view. We must read them in light of the fact, which was patent to the legislature when adopting these laws, that the federal constitution, as interpreted by the Supreme Court of the United States, protects non-resident wholesale and retail dealers in sending their soliciting agents into all parts of the state to solicit and receive orders for spirituous liquors; and that, if we should interpret our law so as to exclude, for example, a wholesale liquor dealer of this state from sending his agents from his place of business in one county into other counties to solicit and receive orders for goods in the same way, we would defeat the revenue object of the statute; for no resident wholesale dealer could pay the license and compete with a non-resident dealer.

Such being the reason of the law, let us look at the case at bar from this standpoint and in the light of the prior decisions of this Court on the points involved. In *State* v. *Hughes,* 22 W. Va. 743, decided in 1883, before the words "solicit and receive orders" were inserted in the statute by the act of 1887, it was held that a partner of a licensed liquor firm in Wood county, who solicited and received orders for his firm in Taylor county, which he forwarded to his firm in Wood county to fill, and who subsequently collected the price, could not be indicted

in Taylor county for selling without license; because the sale and transfer of property were made in Wood county, on acceptance of the order and delivery to the express agent, there being until then only an executory contract.

In *State* v. *Lichtenstein,* 44 W. Va. 99, the defendant was held not guilty for selling and soliciting and receiving orders for liquors in Mineral county without a license, to be shipped to the purchaser from his house in Cumberland, Md., for the reason that no sale took place in Mineral county, as decided in *State* v. *Hughes.* In this case section 1 of chapter 32 of the Code was held void so far as it affected interstate commerce.

In *State* v. *Wheat,* 48 W. Va. 259, it was held "immaterial that the law confines the license to business at a particular place or one county, since the solicitation and receipt of orders are not for sale and delivery in other counties, but for sale to be executed as consummated contracts at the place and in the county designated in the license; that is the place of sale." In this case a liquor dealer in Ohio county solicited orders by means of circulars addressed to persons in Brooke county, and was indicted for a sale in Brooke county. Judge BRANNON said in this case: "A wholesale business, for success, requires solicitation for orders, and it is usual for wholesale dealers to send out agents and circulars asking custom * * *, the privilege of soliciting and receiving orders being incident to the sale license, and it may be exercised as an attendant upon such wholesale license any where either in person or by agent. If this is not so the wholesale dealer, though he has paid for his license, would be deprived of rights essential to his business, and would be, in soliciting, confined to his county; indeed, he would be confined to his place of business." In distinguishing this case from *State* v. *Swift, supra,* Judge BRANNON says: "That case did not involve the rights of one having a wholesale liquor license, but involved the rights of a druggist, who can sell only for specific purposes, and it was not shown in that case that the sale was for the purpose authorized by the druggist license. This case involves the rights of one having a lawful wholesale liquor license." The only real difference between the case at bar and the case of *State* v. *Wheat* is that in the *Wheat case* the wholesale dealer solicited by means of circular letters addressed to the customer in another county and in this case the liquor company sent its agent to solicit the order.

But Judge BRANNON says in *State* v. *Wheat* that the dealer may solicit orders anywhere, either in person or by agent. The attorney general in his brief in this case admits that the decision in the *Wheat case* is very nearly a decision of the case at bar, and the only difference he claims is the one just noted. We think the distinction is without difference.

If it be true, as was held in *State* v. *Hughes,* that a partner of a licensed house might without violating the law solicit orders in another county, without being liable in the county of solicitation; and, as was held in *State* v. *Flanagan,* 38 W. Va. 53, that a licensed dealer in one county might accept an order from a customer in another county and ship the same by the agency of the express company C. O. D. and collect the money through that agency, and, as was held in *State* v. *Wheat,* might send his circular letter and in that way solicit and receive orders from persons in other counties without rendering himself amenable to law—there is no escape from the conclusion which we now reach, that the defendant in this case was not guilty of the charge in the indictment, and we so hold.

In our opinion, therefore, the circuit court erred in finding the defendant Marks guilty of the offense charged. We therefore reverse, set aside and annul the judgment of the circuit court of Raleigh county entered on the 18th day of July, 1905, finding the defendant guilty and adjudging and ordering that he be confined in the county jail of said county for the period of two months and that the state recover of him the sum of $25., for a fine assessed against him, and the costs of the prosecution.

And this Court, proceeding to make such finding and enter such judgment as the circuit court of Raleigh county should have found and entered, do find that the prisoner is not guilty upon the agreed state of facts of the offense charged against him, and it is therefore considered by the court that he go thereof without day and be discharged from further prosecution in this behalf.

### ON REHEARING.

We are asked in the light of *Delamater* v. *South Dakota,* 205 U. S. 93, decided March 11, 1907, to give a different construction to our statute than that given in the opinion filed. The

*Delamater case* was decided March 11, 1907, the day before we handed down our original opinion in this case, and of course that decision was not before us, nor did we know of it until afterwards.

The effect of the Delamater decision was to bring within the purview and scope of the so called Wilson act, (26 Stat. L. 313, chap. 728) the business of soliciting orders for intoxicating liquors although such orders might only contemplate a contract resulting from final acceptance in another state, where, as in South Dakota, the highest court of the State has held that the act imposing a license on traveling salesman soliciting orders for intoxicating liquors is a police regulation and not a taxing act. As formerly construed by the Supreme Court the provisions of that act were supposed to extend only to intoxicating liquors after they had been brought within the state, and before they became commingled with the mass of other property of the state by a sale in original packages. That act is as follows: "That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." With respect thereto the court says: "The proposition relied upon, therefore, when considered in the light of the Wilson act, reduces itself to this: Albeit the State of South Dakota had power within its territory to prevent the sale of intoxicating liquors, even when shipped into that State from other States, yet South Dakota was wanting in authority to prevent or regulate the carrying on within its borders of the business of soliciting proposals for the purchase of liquors, because the proposals were to be consummated outside of the State, and the liquors to which they related were also outside the State. This, however, but comes to this, that the power existed to prevent sales of liquor, even when brought in from without the State, and yet there was no authority to prevent or regulate the carrying on the accessory business of soliciting orders within

the State. Aside, however, from the anomalous situation to which the proposition thus conduces, we think to maintain it would be repugnant to the plain spirit of the Wilson act. That act, as we have seen, manifested the conviction of Congress that control by the States over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject. When, then, for the carrying out of this purpose the regulation expressly provided that intoxicating liquors coming into a State should be as completely under the control of a State as if the liquor had been manufactured therein, it would be, we think, a disregard of the purposes of Congress to hold that the owner of intoxicating liquors in one State can, by virtue of the commerce clause, go himself or send his agent into such other State, there in defiance of the law of the State, to carry on the business of soliciting proposals for the purchase of intoxicating liquors."

But we do not see what particular bearing the *Delamater case* can have on the case in hand. No question of interstate commerce is here involved. We perceive, however, that that case may have a very material bearing thereon when we shall come again to consider a case involving an interstate transaction, such as was involved in *State* v. *Lichtenstein,* 44 W. Va. 99. We have held in this case that an agent of a licensed dealer in one county who solicits orders for his principal in another county, is not guilty of the offense provided against by the statute. But our law is designed to regulate within the state the business of selling, offering or exposing for sale or soliciting and receiving orders for spirituous liquors, and no one within the state without a state license can, by himself or his agent, engage therein. If then by virtue of the Wilson act a non-resident dealer is no longer protected by the federal constitution, why should he without a state license to sell in this state, be permitted to carry on by himself or his agents the business of selling or soliciting or receiving orders for spirituous liquors, a privilege not accorded our own citizens? Of course this is not the question before us in this case, and it is not decided. It will be time to decide this question when such a case shall be presented.

The legislature is perfectly competent to prohibit the business of soliciting and receiving orders, for spirituous liquors, without a state license therefor, and make a violation thereof a separate

and distinct offense; but we do not think our present statute can be construed to have done so. The *Delamater case* furnishes a guide whenever in its wisdom the legislature shall see fit to act; but until it has acted we feel bound by well recognized canons of construction to adhere to our former conclusions in this case.

*Reversed.*