NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0712n.06
Filed: August 16, 2005
File Name: 05a0712n.06
Filed: August 16, 2005

No. 04-3713
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **BPNC, INC.,** *et al.***,** | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **HOPE TAFT,** *et al.,* | ) | **COURT FOR THE NORTHERN** |
| | ) | **DISTRICT OF OHIO** |
| **Defendants-Appellees.** | ) | |

**BEFORE: SILER and SUTTON, Circuit Judges; O'MEARA, District Judge.**[*]

**JOHN CORBETT O'MEARA, District Judge.** Plaintiffs-Appellants BPNC, Inc., Brian

Pearson and Nicolas Costanzo (collectively "Plaintiffs") appeal the district court's orders granting

Defendant-Appellee Hope Taft's ("Taft") motion to dismiss and Defendants-Appellees Rae Ann

Estep, Pam Laycock, Rodney Isaacson, and Earl Mack's (collectively "State Defendants") motion

for judgment on the pleadings. For the reasons set forth below, we will affirm the orders of the

district court.

## BACKGROUND FACTS

In 1998 plaintiffs Brian Pearson and Nicolas Costanzo developed the idea of selling a

product consisting of gelatin infused with alcohol. For years, similar products, referred to as "Jello

shots," have been made and served in homes, bars and restaurants. Pearson and Costanzo, realizing

---

[*]The Honorable John Corbett O'Meara, United States District Court for the Eastern District
of Michigan, sitting by designation.

that there was no such product available commercially, developed one called "Zippers." They opened the business as (and the court is not making this up) Fubar, Inc., later changing the corporate name to BPNC, Inc., also an appellant in this suit.

According to Plaintiffs, Costanzo contacted the Ohio Department of Commerce, Division of Liquor Control ("Division") in February 1998 in order to obtain the necessary permit for Zippers. They contend that liquor control agent Dan Cesner told him they did not need a liquor permit for the product because it would be sold in solid form. Believing that no license was required, Plaintiffs began distributing Zippers in Ohio and later in other parts of the country.

In August of the same year, Rodney Isaacson, an inspector with the Division, saw the product on the shelf of a carryout store in Oregon, Ohio, and informed the store owner that the product should be removed. Plaintiffs called Cesner, who then claimed he had never spoken to Costanzo and informed Plaintiffs they *did* need a liquor license to distribute Zippers. Plaintiffs claim they were told the permit process would take six to eight weeks. Ultimately, however, the permit allowing them to distribute Zippers was not issued for nearly a year.

Plaintiffs brought suit in December 2002, alleging that defendant Taft, wife of Ohio's governor, and State Defendants conspired to destroy their business because they disliked the product and believed Zippers would appeal disproportionately to children and adults under the age of 21. Plaintiffs alleged that "throughout the existence of Fubar and BPNC, Pearson and Costanzo, as company representatives, were in regular contact with various agencies of the State of Ohio in an effort to register and legally market their product within the State, but they were met with resistance,

2

delay, and harassment on a continuing basis from 1998 until the present time." Joint Appendix ("JA") at 108. They further alleged that defendant Taft made public speeches and issued press releases expressing her concerns about Zippers. JA at 109-10. Plaintiffs went on to allege that Defendants engaged in a systematic conspiracy in which they interfered with contracts with BPNC customers, displayed public animosity toward them and the Zippers product, filed false criminal charges against them, unlawfully searched their offices in Toledo and seized their property, and intentionally delayed and frustrated their attempts to obtain legal permits to manufacture and distribute Zippers in Ohio. Plaintiffs sought nearly $10 million in damages plus attorneys' fees and costs.

The district court granted defendant Taft's motion to dismiss June 18, 2003. On May 10, 2004, the court granted the motion for judgment on the pleadings filed by State Defendants. Plaintiffs filed a timely appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

"We review a district court's decision to dismiss a suit pursuant to [Fed. R. Civ. P.] 12(b)(6) *de novo.*" *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). This court construes the complaint in the light most favorable to Plaintiffs and must accept all of their factual allegations as true. "When an allegation is capable of more than one inference, it must be construed in [] [P]laintiff[s'] favor." *See id.* Dismissal under Fed. R. Civ. P. 12(b)(6) "is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). We employ this

3

same *de novo* review when considering a district court's grant of judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c). *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

## DISCUSSION

Although the district court did not rule upon the issue below, State Defendants argue that Pearson and Costanzo lack standing to sue on BPNC's behalf. Since standing is "the threshold question in every federal case," *see Warth v. Seldin*, 422 U.S. 490, 498 (1975), this issue must be addressed at the outset.

"[A]n action to redress injuries to a corporation . . . cannot be maintained by a stockholder in his own name . . . ." *See, e.g., Canderm Pharmacal, Ltd. v. Elder Pharm., Inc.*, 862 F.2d 597, 602-03 (6th Cir. 1988)(citations omitted). Accordingly, this appeal could be dismissed to the extent Pearson and Costanzo are representing BPNC's interests because there is no indication that BPNC's co-founders "suffer[ed] an injury separate and distinct" from BPNC's purported injury. *See Quarles v. City of East Cleveland*, 202 F.3d 269, 1999 WL 1336112, at *3 (6th Cir. 1999) (*per curiam*) (table). Nevertheless, since BPNC also brought this action in its own name, the court will consider the remaining arguments.

## I. STATE DEFENDANTS

Courts are authorized under 42 U.S.C. § 1983 to "redress violations of 'rights, privileges, or immunities secured by the Constitution and [federal] laws' that occur under color of state law." *See Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989). This provision

"creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). To establish a § 1983 violation, Plaintiffs must demonstrate that Defendants "while (1) acting under color of state law (2) caused the deprivation of a federal right, constitutional or statutory." *See Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999) (citations omitted). "If either element is missing, then a § 1983 claim has not been properly pled." *Id.*

The gravamen of Plaintiffs' complaint is that State Defendants violated their rights by delaying approval of a liquor license. Plaintiffs, however, have no constitutional right to sell liquor or products containing liquor. A permit issued pursuant to liquor control statutes is not a property right. *State ex rel. Zugravu v. O'Brien*, 130 Ohio St. 23, 26 (1935). All rights are held subject to the police power of the state; and if the public safety or the public morals require the discontinuance of any manufacture or traffic, the legislature may provide for its discontinuance, notwithstanding that individuals or corporations may suffer inconvenience. *Beer Co. v. Massachusetts*, 97 U.S. 25, 32 (1877). Because the state has the constitutional power to prohibit even the manufacture and sale of intoxicating liquors, it has the power to regulate and restrict the sale of them as part of that power and has the constitutional power to regulate and control any act in furtherance of such sale. *Delamater v. South Dakota*, 205 U.S. 93, 97-98 (1907).[1]

---

[1]More recently the United States Supreme Court reiterated that "[t]he aim of the Twenty-first Amendment was to allow States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation and use." *Granholm v. Heald*, 125 S.Ct. 1885, 1902 (2005).

5

Liquor permits are not contracts and create no vested rights; they are merely temporary permits that are subject to revocation by the power authorizing their existence. *Scioto Trails Co. v. Ohio Dep't of Liquor Control*, 11 Ohio App.3d 75, 77 (1983). Therefore, even if State Defendants interfered with or denied BPNC the opportunity to market the Zippers product, BPNC suffered no constitutional deprivation.

In their Second Amended Complaint ("SAC"), Plaintiffs raised eight claims alleging that State Defendants violated their constitutional rights. The district court found that the facts as pleaded were insufficient to support a constitutional violation or deprivation and we agree.

Count I claimed only that Plaintiffs had been deprived of constitutional rights in violation of 42 U.S.C. § 1983; however, as we stated earlier, § 1983 does not create any substantive rights. *Flint*, *supra*. Count II appeared to be a claim for interference with contract, which Plaintiffs claimed was a violation of due process. The district court noted that it is "more likely that plaintiffs intended their [contractual] claim to allege a violation of plaintiffs' Fourteenth Amendment procedural due process rights." JA at 67. However, that is not what was claimed in the SAC. Nor did the SAC allege that the State of Ohio passed any law impairing any contractual obligation which could have been a violation of the Contracts Clause. In addition, BPNC cannot sue under § 1983 for tortious interference with contract because it is not a right that arises under federal law.

In Count III, Plaintiffs alleged they were denied their Fourth Amendment right to be free from unreasonable searches and seizures; and Count VII alleged that State Defendants violated their Fourth Amendment right "to be free of a warrant application that intentionally misstates material

facts." JA at 6. Both claims are based on the same event, the search of the corporation's Toledo office and seizure of BPNC's business records.

Plaintiffs alleged that the warrant, issued upon an allegedly false affidavit, was the authority upon which the unlawful search and seizure was based. State officers, however, are entitled to rely on a judicially secured warrant unless the warrant was so lacking in indicia of probable cause that existence of probable cause is unreasonable. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). In this case Plaintiffs failed to identify any statements in the affidavit they believed were false; failed to identify which state officials, if any, stated a deliberate falsehood or showed reckless disregard for the truth with respect to the application for the warrant; and failed to show how any allegedly false statements were material to a finding of probable cause. *See, e.g., Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003).

Count IV alleged defamation under § 1983. Even if the Due Process Clause did protect a person's reputation, name or integrity, *see Quinn v. Shirley*, 293 F.3d 315, 320 (6th Cir. 2002), *but see Paul v. Davis*, 424 U.S. 693, 711-12 (1976), defamation alone is not a constitutional deprivation, *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Plaintiffs did not allege that State Defendants' statements deprived them of any constitutionally protected liberty or property interest such as employment, for example. Besides harm to reputation, the only other injury Plaintiffs alleged was loss of Zippers sales. Lost sales, however, are only an indirect injury. *Cf. Nuclear Transp. & Storage, Inc. v. United States*, 890 F.2d 1348, 1354 (6th Cir. 1989) (loss of license is an indirect injury that does not create an entitlement to a hearing). Indirect injuries from governmental action

are not actionable under the Fourteenth Amendment. *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 789 (1980).

In their fifth claim for relief, Plaintiffs alleged that their constitutional due process rights were violated by "having a license revoked and by having approval for their [product] labels rescinded without notice and opportunity to be heard." JA at 21. Plaintiffs, however, failed to identify who issued the license, the type of license issued, or what the license authorized them to do. They raised no factual allegations regarding who revoked the license and when. The same holds true for their complaints regarding labels. The district court correctly found that without these factual allegations, there existed no basis upon which to guess at Plaintiffs' claims.

Count VI alleged malicious prosecution under the Fourteenth Amendment's Due Process Clause. Because a plurality of the Supreme Court has rejected a substantive-due-process right to be free from malicious prosecution, *see Albright v. Oliver*, 510 U.S. 266 (1994) (plurality of four justices) ("Petitioner asks us to recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. We decline to do so."); *see also Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2002), and because Plaintiffs do not allege any facts suggesting that Ohio fails to provide an adequate post-deprivation remedy for cases of malicious prosecution, *see id*. at 283-84 (Kennedy, J., joined by Thomas, J., concurring) (explaining that even if there were a substantive-due-process right to be free from malicious prosecution, "that interest could not be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate postdeprivation remedy"), Plaintiffs cannot succeed on this claim.

Count VIII alleged a claim for violation of the Petition Clause of the First Amendment based upon the allegedly purposeful delay of their applications for liquor permits and licenses. The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials. Plaintiffs did contact their U.S. Representative and state senator with their concerns, but "[a] citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)(*per curiam).*

## II. DEFENDANT HOPE TAFT

To establish a violation of 42 U.S.C. § 1983 regarding the actions of defendant Taft, BPNC must demonstrate that she not only acted under color of state law but also deprived BPNC of a federal statutory or constitutional right. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). The district court correctly found that BPNC failed to demonstrate either element of a § 1983 claim.

To determine whether one acts under color of state law, the court must determine whether the actor is a public official or private person. The spouse of the governor of Ohio is not considered an elected or appointed official of the state of Ohio under Article III, Section 1 of the Ohio Constitution. "[A] private person acts 'under color of' a state statute or other law when he, like the official, in some way acts consciously pursuant to some law that gives him aid, comfort, or incentive," or when he acts in conjunction with a state official. *Griffin v. Maryland*, 378 U.S. 130 (1964).

Only three paragraphs of the SAC allege any actions taken by Taft and include general allegations regarding speeches and statements made by her. BPNC has not asserted that any of her statements were made pursuant to a specific law, nor does the complaint allege that her actions are attributable to the Governor's office. "It must be demonstrated that the State is intimately involved in the challenged private conduct in order for that conduct to become attributable to the state for purposes of a § 1983 action." *Bier v. Fleming*, 717 F.2d 308, 312 (6th Cir. 1983). In this case BPNC has failed to assert any allegation that would demonstrate a sufficient legal nexus between the state and Taft for a court to determine that she acted under color of state law.

In addition, the SAC fails to identify what constitutional or statutory right defendant Taft allegedly violated. As we stated earlier regarding State Defendants, reputation is not a protected liberty or property interest under the Due Process Clause; therefore, Plaintiffs have failed to state a claim for relief under § 1983 because they have failed to demonstrate any deprivation of a federal or statutory right.

## III.  CONSPIRACY CLAIM AS TO ALL DEFENDANTS

Plaintiffs contend that Taft and State Defendants conspired to deprive them of those rights addressed above. Because the district court dismissed all of the substantive claims of the SAC, the court declined to rule on whether Plaintiffs had stated a claim for conspiracy. There are, however, strict pleading requirements for civil conspiracy claims; and courts traditionally view conspiracy claims against public officials with suspicion and disfavor. *Fisher v. City of Detroit*, 1993 U.S. App. LEXIS 23277 (6th Cir. 1993). "It is well-settled that conspiracy claims must be pled with some

degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

In this case Plaintiffs failed to allege material facts to show that Defendants engaged in a single plan to violate Plaintiffs' constitutional rights. Instead, Plaintiffs succinctly concluded, "All of the Defendants agreed and conspired to disrupt the business operations of BPNC and deny permits and licenses for BPNC, Inc." JA at 19. While State Defendants' alleged conduct ranges from changing their minds about permits, to making negative comments about the company, to requiring written approval before issuing a permit, to arranging to file a false affidavit for a search warrant, nothing in these allegations suggests that two or more of the defendants acted jointly under a single plan to deprive Plaintiffs of their constitutional rights. In addition, there is nothing in the complaint that shows a connection between defendant Taft's public statements and the actions or inaction of State Defendants in processing Plaintiffs' applications for appropriate licenses. The district court correctly dismissed the conspiracy claims against all the defendants.

## IV. QUALIFIED IMMUNITY

The district court's finding of qualified immunity as to State Defendants in this case is reviewed *de novo*. *See Bloch*, 156 F.3d at 677. "Qualified immunity is not a defense to liability[,]" but immunity from suit. *See Crockett v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003). In civil suits for money damages pursuant to § 1983, qualified immunity protects State Defendants "insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *See Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A two-fold inquiry is employed to determine whether State Defendants are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). "First we must determine whether, taken in the light most favorable to [Plaintiffs], the facts alleged are sufficient to make out a violation of the Constitution." *See Greene*, 310 F.3d at 894. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *See id.* (quoting *Saucier*, 533 U.S. at 201). Second, if "a violation could be made out on a favorable view of the parties' submissions, . . . [we] ask whether the right was clearly established." *Id.* (quoting *Saucier*, 533 U.S. at 201).

In this case we have found that the facts, taken in the light most favorable to Plaintiffs, are insufficient to allege a constitutional violation. Therefore, under the first prong of the inquiry, Plaintiffs are entitled to qualified immunity.

For all of these reasons, the district court's orders granting Taft's motion to dismiss and State Defendants' motion for judgment on the pleadings are **AFFIRMED.**