7424

## STATE v. DAVIS.

LIQUORS—DRUMMER—CONSTITUTIONAL LAW.—One traveling through the country distributing letters and blank orders for whiskies of a nonresident dealer is a liquor "drummer" under the terms of the act making it a misdemeanor to solicit or receive orders for interstate shipment of liquors, and the act is not violative of article I, section 8, of the Federal Constitution.

Before ———————, J., Laurens, September term, 1909. Affirmed.

Indictment against Fletcher Davis for soliciting orders for whiskey. From sentence defendant appeals.

*Messrs. Cannon & Blackwell,* for appellant, cite: *Is the act constitutional?* 82 S. C., 93; 50 N. W., 425; 17 Ency., 65, 84; *Schollenberg* v. *Pennsylvania,* 171 U. S.; 170 U. S., 412; 214 U. S., 222; 120 U. S., 489; 72 Fed., 657; 156 U. S., 319; 115 Fed., 339; 187 U. S., 137; 95 U. S., 472; 9 Wheat., 1, 210. *Does the indictment charge an indictable offense?* 170 U. S., 412; 203 U. S., 270. *Was defendant a liquor drummer?* 120 U. S., 489; 72 Tenn., 63; 28 Fed., 127; 36 Am. R., 24; 61 S. W., 9; 8 L. R. A., 328.

*Solicitor R. A. Cooper,* contra.

January 25, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. The practical question raised by the exceptions herein is whether the statute under which the defendant was indicted and found guilty by the jury is unconstitutional, on the ground that it is in violation of article I, section 8 of the United States Constitution, which provides that Congress shall have power to regulate commerce among the several States.

The indictment under which the defendant was convicted charged:

"That Fletcher Davis, late of the county and State aforesaid, on the twenty-fifth day of June, in the year of our Lord one thousand nine hundred and nine, with force and arms, at Laurens, in the county and State aforesaid, did wilfully and unlawfully conduct the business of a liquor drummer, by then and there soliciting orders for interstate shipment of corn whiskey, rye whiskey, apple brandy, peach

brandy, and other alcoholic liquors used as a beverage, in this, that the said Fletcher Davis did then and there, being the agent of North State Distilling Company, a corporation doing business in the city of Richmond, in the State of Virginia, distribute and give to Jim Davis, Reddick, Eugene Robertson, Joe Williams, George Hunter, various and sundry persons, certain letters of tenor and effect as follows:

" 'Dear Sir: Whether you use whiskey as a beverage or not, there are probably times when absolutely pure whiskey would be useful in your home, for medical purposes.

" 'When you buy North State Distilling Company's whiskey, you get direct from the distiller the purest and best whiskey, with all its original strength, richness and flavor, that can be produced from our well-equipped distillery.

" 'You get goods that have not passed through the hands of dealers, thus saving their big profits; and, further,

" 'You obtain, at the distiller's price, a whiskey that cannot be beat at any price, and yet it costs less than dealers charge for the inferior, adulterated kind.

" 'Send us a trial order, and if, after using as much as a quart, you do not think our whiskey is better than you have been buying, send the remaining portion back at our expense and we will refund your money. How could any offer be fairer? The expense is all ours, if you are not satisfied.

" 'Let us hear from you with an order. Remember that on bottle goods we pay all charges. Use enclosed order. blank. Yours very truly,      North State Distilling Co.'

"Then and there and thereby soliciting orders for said whiskeys, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

The statute in question is as follows:

"An Act to declare the soliciting of orders or offer to sell liquors or beverages containing alcohol a misdemeanor, and to provide punishment therefor.

Section 1. "*Be it enacted* by the General Assembly of the State of South Carolina, That each and every person, whether acting for himself or as agent for any person, firm or corporation, who shall conduct the business of liquor drummer, soliciting or receiving orders for interstate shipment, within any county within this State, except as now authorized by law, any spirituous, malt, vinous, fermented, brewed, whether lager or rice beer, or other liquors or beverages, or any compound or mixture thereof which contained alcohol and is used as a beveage, shall be guilty of a misdemeanor, and, on conviction, fined in a sum not exceeding one thousand dollars or imprisoned for not exceeding six months, or both fine and imprisonment, in the discretion of the Court."

The defendant thus testified as to the manner in which he conducted his business:

"Q. What is your business? A. I am advertising for the North State Distilling Company, Richmond. Q. Where does the North State Distilling Company do business? A. Richmond, Va. Q. What kind of advertising are you doing? A. Just handing out price lists, order blanks. Q. Handing out the price lists that Mr. Sullivan identified there? A. Yes, sir. Q. How do you hand out those? A. Just walk along the street, and every man I see I give one; I lay them in places of business, pool rooms, and places like that. Q. Do you ever solicit any orders? A. Never did in my life. Q. Do you ask any person for an order? A. Never asked in my life. I give them these things, and if they want to send them in it is all right. I never taken an order in my life. Q. You never solicited any orders or received any orders? A. Never did in my life; no, sir. Q. If a man had asked you to write up one of those blanks, wouldn't you have done it? A. I have had thousands to ask me and didn't do it."

The first question that will be considered is whether the defendant comes within the meaning of the word

"drummer," as used in the said statute. Our interpretation of the word, as thus used, is that it denotes a traveling agent, who, personally, solicits orders to be forwarded to his principal, residing beyond the limits of the State.

His Honor, the presiding Judge, charged the jury that "a person can by delivering a letter solicit orders for whiskey just as well as verbally. It is as much against the law for a person to deliver a letter, which, in terms, solicits orders for whiskey, as it is for him to do so by word of mouth."

There was no exception to this charge, but, even if it had been assigned as error, there is no question that a traveling agent cannot solicit orders by letters, personally delivered by him, when it would be in violation of law for him to solicit verbally in similar language.

If the defendant had handed out letters signed by himself, together with the price lists containing blank orders, with the request that such persons fill out the blanks and send the orders directly to the non-resident principal, he would certainly be engaged in soliciting orders for whiskey.

When he delivered the letters signed by his principal, together with the price lists containing blank orders, he adopted this mode of soliciting orders as fully as if the letters had been signed by him, and thereby became a *drummer* within the meaning of the statute.

A contrary ruling would practically defeat the ends which the statute had in view.

The case of *Delamater* v. *South Dakota,* 205 U. S., 93, is conclusive of the question presented by the exceptions. The facts of that case are thus stated in the opinion: "A firm established in St. Paul, Minnesota, which was engaged in dealing in intoxicating liquors, employed Delamater, the plaintiff in error, as a traveling salesman. As such salesman Delamater, in the State of South Dakota, carried on the business of soliciting orders from residents of that State for the purchase, from the firm in St. Paul, of intoxicating liquors in quantities of less than five gallons. The course

of dealing was this: The orders were procured in the form of. proposals to buy, and when accepted by the firm the liquor was shipped from St. Paul to the persons in South Dakota who made the proposals, at their risk and cost, on sixty days' credit. At the time Delamater was engaged in South Dakota in the business just stated the law of that State imposed an annual license charge upon 'the business of selling or offering for sale intoxicating liquors within the State by any traveling salesman who solicits orders by the jug or bottle in lots less than five gallons.' A violation of the statute was made a misdemeanor, punishable by fine or imprisonment, or both, in the discretion of the Court."

In delivering the opinion of the Court Mr. Justice White says: "It is manifest, as the subject dealt with is intoxicating liquors, that the decision of the cause does not require us to determine whether the restraints which the statute imposes would be a direct burden on interstate commerce if generally applied to subjects of such commerce, but only to decide whether such restraints are a direct burden on interstate commerce in intoxicating liquors as regulated by Congress in the act commonly known as the Wilson act, * * * which is as follows (26 Stat. at L., 313, chap. 728) : 'That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.' * * * That act, as we have seen, manifested the conviction of Congress that control by the States over the traffic of dealing in liquor within their borders was of such importance that it was wise to adopt a special regulation of interstate commerce on the subject.

When, then, for the carrying out of this purpose, the regulation expressly provided that intoxicating liquors coming into a State should be as completely under the control of a State as if the liquor had been manufactured therein, it would be, we think, a disregard of the purposes of Congress to hold that the owner of intoxicating liquors in one State can, by virtue of the commerce clause, go himself or send his agent into such other State, there, in defiance of the law of the State, to carry on the business of soliciting proposals for the purchase of intoxicating liquors."

After commenting on the case of *Hooper* v. *California*, 155 U. S., 648, which decides that a State may regulate and forbid the making, within its borders, of insurance contracts with its citizens, by foreign companies of their agents, he proceeds as follows: "The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the State in respect thereto. As we have seen, the right of the States to prohibit the sale of liquor within their respective jurisdictions, in and by virtue of the regulation of commerce embodied in the Wilson act, is absolutely applicable to liquor shipped from one State into another, after delivery and before the sale in the original package. It follows that the authority of the states, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the States to forbid agents of non-resident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors, which otherwise the citizen of the State 'would not have thought of making,' must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of the conceptions of public order and social well-being, which it may be assumed lie at the foundation of regulations concerning the traffic in liquor."

This case so fully disposes of the question under consideration that we deem it unnecessary to cite other authorities.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.