# State, *ex rel.* Black *v.* Delaye.

*Injunction Against Advertising Liquors.*

(Decided May 13, 1915. 68 South. 993.)

1. *Intoxicating Liquors; Regulation; Anti-Advertising Law.*—The Anti-Advertising Liquor Law, Acts 1915, p. 37, is all in the present tense and contains no indication of exception or postponement of time when it shall become effective, but instead makes it effective immediately on enactment because required by the public welfare, and it applies at once to all sections of the state, including territory where the sale of liquor was permitted under the local option statute.

2. *State; Powers; Police.*—The police power of the state to impose restraints and burdens on persons and property for the

[State, ex rel. Black v. Delaye.]

public health, good order and prosperity, was not surrendered to the general government, nor restrained by the Federal Constitution, and is exclusive.

2. *Intoxicating Liquors; Regulation; Police Power.*—The regulation or prohibition of the manufacture and sale of intoxicating beverages is a proper subject for the exercise of police power.

4. *Same; Injunction.*—A bill for injunction against violation of the anti-advertising liquor law need not negative the application of the rule concerning original packages in inter-state shipments, that being a matter of defense.

5. *Commerce; Regulations; Original Packages; Newspapers.*—Where newspapers which are published out of the state are received by a dealer within the state, the bundles broken and the individual papers placed upon sale, such papers are no longer original packages, but become mingled with the property of the state generally, and subject to state regulation.

6. *Same; Anti-Advertising Liquor Law; Constitutionality.*—The Anti-Advertising Liquor Law as applied to a newspaper published out of the state, and containing advertisements of liquor manufactured out of the state, and to be shipped to individuals in the state ordering it, does not violate section 8, article 1, of the Federal Constitution, since the states have the right to prohibit sales of intoxicating liquors, and incidentally the right to prohibit solicitation of such sales whether by agent or advertisement.

7. *Courts; Decision; Constitutional Construction.*—A decision of the United States Supreme Court construing the Interstate Commerce Clause of the Federal Constitution is final and binding on the state courts, and a former decision of the state courts, in conflict therewith, is thereby overruled.

8. *Intoxicating Liquors; Advertising.*—Since the power to prohibit or regulate the sale of intoxicating liquors, includes also the power to prohibit solicitation for such sales by advertisement or agent, the enactment of the Anti-Advertisement Liquor Law of 1915, was a proper exercise of the police powers of the state.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Bill by the state on the relation of Hugo L. Black as solicitor, to enjoin W. C. Delaye from selling or exhibiting for sale, papers and magazines containing liquor advertisements. From an order denying the temporary injunction, complainant appeals. Reversed and an order entered granting the injunction.

W. L. MARTIN, ATTORNEY GENERAL, and SAMUEL D. WEAKLEY, for appellant.

[State, ex rel. Black v. Delaye.]

BANKS, DEEDMEYER & BIRCH, and BENJAMIN S. GROSS, for appellee.

GARDNER, J.—The bill in this cause was filed by the state of Alabama upon the relation of Hugo L. Black, solicitor for Jefferson county, and alleged, in substance, as follows: That W. C. Delaye, a resident of Birmingham, Ala., and over the age of 21 years, was in charge of and conducted a news stand in said city, and that he had been from time to time, at least since February 10, 1915, selling various newspapers, magazines, and periodicals at such news stand to the purchasers who applied therefor.

In paragraph 3 of the bill it is alleged that the said Delaye since February 10, 1915, when what is known as the "Anti-Advertising Liquor Law" took effect in this state, sold various and sundry newspapers, magazines, and periodicals containing advertisments of whisky, and it may be other beverages embraced within the term "prohibited liquors," as defined in the law of Alabama. It is further alleged that on March 8, 1915, the said Delaye at said news stand did personally circulate and sell a newspaper called the "Inquirer," of Cincinnati, Ohio, of date March, 7, 1915, containing two advertisr ments of whisky, one of them being an advertisement of "Sandy River" and the other of "Magnolia" whisky. The prices at which "Sandy River" whisky might be obtained were stated, with a commendation of the said liquors, and in solicitation of mail orders it was said: "This department is on the job; all goods carefully packed and sealed in plain packages without necessary marking."

The bill contains with more or less detail, a description of the several advertisements above referred to, but which it is unnecessary to notice further. In the con-

[State, ex rel. Black v. Delaye.]

clusion of paragraph 3 it is alleged that the said Delaye
has stated since the 10 of February, 1915, that he in-
tends to continue to sell newspapers and periodicals
containing advertisements of whisky and to pay no at-
tention to the statutes of Alabama in relation to liquor
advertisements, or words to that effect.

Application was made to Hon. J. H. Miller, judge of
the city court of Birmingham, for an injunction where-
upon he ordered that the same be set down for hearing;
as authorized by section 4528 of the Code of 1907. On
April 5, 1915, the said judge entered an order deny-
ing the injunction as prayed for, reciting in the order,
however, due notice to the defendant and his appearance
at the hearing, and that none of the averments of the
bill were by him denied. The order was accompanied
by an opinion of the judge, which is copied in the record,
and which discloses that he entertained the view that
the complainant was not entitled to the writ for the
reason that the bill showed that the enforcement of the
statute there sought, under the facts as alleged in the
bill, would burden interstate commerce and violate the
federal Constitution in that respect.

(1) From the order denying the writ the complainant
prosecutes this appeal, as provided by section 4531 of
the Code of 1907. It is seen from the foregoing that
this appeal involves the question of the validity of the
act of the Legislature of February 10, 1915 (Laws 1915
p. 37), commonly referred to in this record as the "Anti-
Advertising Liquor Law." It is first insisted, however,
that the writ was properly denied upon the ground that
the law is not now effective in the city of Birmingham
for the reason that, by virtue of an election under what
is known as the "Local Option Law," the sale of liq-
uors in said city was thereby legalized, and that, this

being true, the law in question is not effective in Birmingham at this time.

In the case of *West. Ry. of Ala. v. Cap. B. & I. Co.*, 177, Ala. 149, 59 South. 52, it was held by this court that under the general laws and policy of this state, intoxicating beverages, including whisky, were prohibited to be sold, even after the enactment of the local option laws, and that the effect of said local option laws was merely to ingraft an exception in particular cases on the general prohibition law of the state. The opinion also clearly demonstrates what was meant by the use of the words "prohibited liquors," in the act there under review.

The above authority is directly in point in this case, and is opposed to the contention of the appellee. In addition to this, however, this question relates solely to what was the intention of the Legislature. The title of the act is as follows: "To further promote temperance and suppress the evils of intemperance; to prevent the advertising or solicitations of orders for alcoholic, spirituous, vinous or malt liquors, such as brandy, wine, rum, gin, beer, and other intoxicating liquors and beverages prohibited by the laws of Alabama to be manufactured, sold or otherwise disposed of in this state; to provide for the removal of advertisements in defined cases, and to provide for the prevention of the continuation and repetition of the acts hereby made unlawful; and to prescribe remedies, procedure, penalties and punishment."

The preamble of the act reads as follows: "Whereas, it is the public policy of this state to discourage the use and consumption of prohibited liquors and beverages, and to secure the strict enforcement of the laws against the manufacture, sale, keeping for sale, or oth-

[State, ex rel. Black v. Delaye.]

er disposition thereof within this state; that is to say, alcoholic, spirituous, vinous or malt liquors." etc.

And the body of the act, as to matters therein prohibited and the punishment therefor, and the authority given the sheriff and police officers to remove such prohibited advertisements, etc., all speaking in the present tense, contains no exception as to any part of the state, and gives no indication of any postponement of the time when it is to become effective. On the contrary, the concluding section of the act reads: "Sec. 5. That this act shall take effect from and after its final passage and enactment into law, the public welfare requiring it."

We think it too clear for further discussion that the act became effective over the entire state immediately upon its passage, without any exception as to any particular locality, and that therefore it had application to the city of Birmingham, where this respondent was engaged in business.

(2)   In the case of *In re Rahrer,* 140 U. S. 554, 11, Sup. Ct. 866, 35 L. Ed. 572, Chief Justice Fuller, speaking for the court, said: "The power of the state to impose restraints and burdens upon persons and property in conservation and promotion of the public health, good order, and prosperity is a power originally and always belonging to the states, not surrendered by them to the general government nor directly restrained by the Constitution of the United States, and essentially exclusive."

(3)   That the regulation of the manufacture and sale of intoxicating liquors is a proper subject of the exercise of police power is a proposition which is now so universally recognized as to have passed beyond the pale of controversy. As said by this court in *State ex·*

*rel. Meyer v. Greene,* 154 Ala. 249, 46 South. 268; "That the police power of a state may be appropriately exercised in the prohibition of dealings in intoxicants has been too long settled to now admit of further consideration with a view to its denial."

Indeed, this principle is not here controverted.

It is insisted by counsel for appellee that as the bill shows that the particular newspaper alleged to have been circulated and sold by the respondent was published in Cincinnati, Ohio, the law which attempts to prohibit its circulation is void for the reason that it is violative of section 8, art. 1, of the Constitution of the United States, commonly called the "commerce clause," which delegates to the national Congress alone the power to regulate commerce between the states. It is to be noted that paragraph 3 of said bill does not confine the acts of the respondent to the circulation of the one paper, the Cincinnati Inquirer, but it alleges that he sold various and sundary newspapers and magazines containing advertisements of whisky; and that no answer was filed to the bill, nor other pleadings or affidavit denying the averments thereof.

In view of the pleading, therefore, it may be doubted that the denial of the writ in its entirety was justified, irrespective of the constitutional questions above noted. That question, however, is also presented; and, in view of its importance and of the consequent desirability of its early determination by the court, we treat it as the question of prime importance on this appeal, and it is necessarily decisive of all others here presented.

It is insisted that, because of the commerce clause of the federal Constitution, this state is without power to pass a law which would prevent the respondent from selling at his news stand in Birmingham a newspaper or

magazine printed in another state and containing advertisements of prohibited liquors, as defined in the act of February 10, 1915, and that such an act would be an unwarranted interference with the commerce between the states.

(4) There is nothing in the bill, and therefore nothing in the record before us, to show that defendant laid claim to the consideration of any principle involved in what are commonly called the "Original Package Cases," which would be a matter defensive in its nature, and which is not required to be negatived in the bill.—Keith v. State, 91 Ala. 2, 8 South. 353, 10 L. R. A. 430.

(5) There can be no question, however, that when the newspapers are received by the defendant from without the state, either by mail, or in bulk, or in a bundle, by express or freight, upon the breaking of the bundle and placing them upon the news stand for sale, they would become commingled with the mass of property in this state and would be subject to its police laws; and that such a single newspaper or periodical sold would not be an original package within the meaning of the law as stated in the decisions of the United States Supreme Court, in the cases of Purity Ex. & T. Co. v. Lynch, 226, U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, and Austin v. Tenn., 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224. In the latter case, in discussing this question and how, under the guise of this principle of the "Original Package Cases," many evasions of state laws have been attempted, the following extract from Schollenberger's Case, 156 Pa. 201, 27 Atl. 30, 22 L. R. A. 155, 36 Am. St. Rep. 32, was quoted with approval: "One who plants his feet squarely upon the police laws of this state and defies its officers to suppress or to punish

his unlawful trade must show a clear legal right to take and maintain his position as a public enemy, or suffer the penalty of the broken law. To hold otherwise would make it impossible for the people of any state to protect themselves from evils that by common consent throughout the civilized world need to be restrained and removed by suitable legislation. It would also strike a blow of absolutely crushing weight at the existence of the police power in the several states, and render all attempts at its exercise ineffectual and useless."

There can be no question that the newspapers and periodicals placed on the news stand of the respondent for sale to the public became mixed and mingled with the mass of property in Alabama, and thus subject to its police laws.

(6)    Does the fact that the newspaper was published in another state, and that the advertisement concerned liquors to be shipped from another state, exempt the respondent from the operation of the anti-advertising liquor law, which prohibits the circulation of newspapers carrying such advertisements within this state? We are of the opinion that this question is answered in the negative in the case of *Delamater v. South Dakota,* 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733. It must be conceded that advertising an article for sale is in reality but a solicitation of business; the reason for the advertisement being found in the fact that it stimulates business.—*State of Maine v. Bass Pub. Co.,* 104 Me. 288, 71 Atl. 894, 20 L. R. A. (N. S.) 495. The facts of the *Delamater Case,* as briefly stated in the opinion, are as follows: "A firm established in St. Paul, Minn., which was engaged in dealing in intoxicating liquors, employed Delamater, the plaintiff in error, as a traveling salesman. As such salesman

[State, ex rel. Black v. Delaye.]

Delamater, in the state of South Dakota, carried on the business of soliciting orders from residents of that state for the purchase, from the firm in St. Paul, of intoxicating liquors in quantities of less than five gallons. The course of dealing was thus: The orders were procured in the form of proposals to buy, and when accepted by the firm the liquor was shipped from St. Paul to the persons in South Dakota who made the proposals, at their risk and cost, on 60 days' credit. At the time Delamater engaged in South Dakota in the business just stated; the law of that state imposed an annual license charge upon 'the business of selling or offering for sale' intoxicating liquors within the state, 'by any traveling salesman who solicits orders by the jug or bottle in lots less than five gallons.' A violation of the statute was made a misdemeanor punishable by fine or imprisonment, or both, in the discretion of the court. Delamater, not having paid the license charge, was prosecuted under the statute. At the trial, although the uncontradicted proof established the carrying on of business within the state, as above mentioned, Delamater requested a binding instruction to the jury in his favor, on the ground that the statute did not apply, and, if it did, that it was void because repugnant to the commerce clause of the Constitution of the United States."

As that case is, in our opinion, conclusive of every constitutional question here insisted upon, frequent quotations from the opinion will be indulged. In the outset Mr. Justice White (present Chief Justice) expressly states that, as the subject dealt with is intoxicating liquors, the decisions of that court touching on the subject of interstate commerce, but dealing with the subjects to which such commerce is generally applied, and not to intoxicating liquors, or, if concerning in-

toxicating liquors, relating to controversies originating before the enactment of what is known as the "Wilson Law," (Act. Aug. 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1913, § 8738), are laid out of view as being inapplicable to the case under consideration. The opinion proceeds: "The general power of the state to control and regulate the business of dealing in or soliciting proposals within their borders for the purchase of intoxicating liquors is beyond question. With the existence of this general power we are not, therefore, concerned."

After quoting the Wilson act, it is pointed out that its purpose was to allow the states, as to intoxicating liquors, the subject of such interstate commerce, to exert ampler power than could have been exercised before the enactment of the statute; and that, in effect by the Wilson act Congress adopted a special rule enabling the states to extend their authority as to such liquors shipped from other states before they became commingled with the mass of property in the state by a sale in the original packages. Continuing, the opinion says: "The proposition relief upon, therefore, when considered in the light of the Wilson act, reduces itself to this: Albeit the state of South Dakota had power within its territory to prevent the sale of intoxicating liquors, even when shipped into that state from other states, yet South Dakota was wanting in authority to prevent or regulate the carrying on within its borders of the business of soliciting proposals for the purchase of liquors, because the proposals were to be consummated outside of the state, and the liquors to which they related were also outside the state. This, however, but come to this: That the power existed to prevent sales of liquor, even when brought from without the state, and yet there

[State, ex rel. Black v. Delaye.]

was no authority to prevent ＊ ＊ ＊ the carrying on the accessory business of soliciting orders within the state. Aside, however, from the anomalous situation to which the proposition thus conduces, we think to maintain it would be repugnant to the plain spirit of the Wilson act."

The writer of the opinion then proceeds to answer some of the arguments of counsel, to the effect that as that court had held that the Wilson act did not authorize state power to attach to liquor shipped from one state into another before its arrival and delivery in the state of its destination, and that therefore the power of the state could not attach to the carrying on of the business of soliciting proposals, as none of the liquor covered by the proposals in that case had arrived and been delivered within the state of South Dakota. The court said: "The business of solicitating proposals in South Dakota was one which that state had a right to regulate, wholly irrespective of when or where it was contemplated the proposals would be accepted or whence the liquor which they embraced was to be shipped. Of course, if the owner of the liquor in another state had a right to ship the same into South Dakota as an article of interstate commerce, and, as such, there sell the same in the original packages, irrespective of the laws of South Dakota, it would follow that the right to carry on the business of soliciting in South Dakota was an incident to the right to ship and sell, which could not be burdened without directly affecting interstate commerce. But, as by the Wilson act the power of South Dakota attached to intoxicating liquors, when shipped into that state from another state after delivery but before the sale in the original package, so as to authorize South Dakota to regulate or forbid such sale,

it follows that the regulation by South Dakota of the business carried on within its borders of soliciting proposals to purchase intoxicating liquors, even though such liquors were situated in other states, cannot be held to be repugnant to the commerce clause of the Constitution, because directly or indirectly burdening the right to sell in South Dakota—a right which by virtue of the Wilson act did not exist."

Answering the argument made by counsel that, as under the decisions of that court, a resident of one state had the right to contract for liquors in another state and receive the same in the state of his residence for his own use, and that therefore the agent of the nonresident dealer had the right to go into South Dakota and solicit orders from residents of that state to be consummated by the acceptance of the proposals of the nonresident dealer, the opinion points out that this insistence ignores the broad distinction between the want of power of a state to prevent a resident from ordering from another state liquor for his own use, and the plenary authority of the state to forbid the carrying on within its borders of the business of soliciting orders for liquor situated in another state. The opinion states: "That the distinction between the two is not only obvious but had been foreclosed by a previous opinion of this court."

Reference is made to the case of *Nutting v. Mass.*, 183 U. S. 553, 22 Sup. Ct. 238, 46 L. Ed. 324, wherein the court was called upon to consider: "The power of the state on the one hand to forbid the making within the state of contracts of insurance with unauthorized insurance companies, and the right of the individual on his own behalf to make a contract with such insurance companies in another state as to property within the state of residence."

[State, ex rel. Black v. Delaye.]

The right of the individual to obtain insurance for himself outside the state of his residence did not sanction the contract of the insurance broker in carrying on the business of soliciting unauthorized insurance. The following is quoted by the writer from the Massachusetts case: "While the Legislature cannot impair the freedom of McKie to elect with whom he will contract, it can prevent the foreign insurers from sheltering themselves under his freedom in order to solicit contracts which otherwise he would have not thought of making. It may prohibit, not only agents of the insurers, but also brokers, from soliciting or intermedling in such insurance, and for the same reasons."

'Applying, then, the principle to the case at hand, the opinion concludes as follows: " The ruling thus made is particularly pertinent to the subject of intoxicating liquors and the power of the state in respect thereto. As we have seen, the right of the states to prohibit the sale of liquor within their respective jurisdictions in and by virtue of the regulation of commerce embodied in the Wilson act is absolutely applicable to liquor shipped from one state into another after delivery and before the sale in the original package. It follows that the authority of the states, so far as the sale of intoxicating liquors within their borders is concerned, is just as complete as is their right to regulate within their jurisdiction the making of contracts of insurance. It hence must be that the authority of the states to forbid agents of nonresident liquor dealers from coming within their borders to solicit contracts for the purchase of intoxicating liquors, which otherwise the citizen of the state 'would not have thought of making," must be as complete and efficacious as is such authority in relation to contracts of insurance, especially in view of

the conceptions of public order and social well-being which it may be assumed lie at the foundation of regulations concerning the traffic in liquor."

In the *Delamater Case*, from which we have so freely quoted, the right of the agent of a nonresident dealer to solicit business was involved, and it was held that, under the Wilson act, this agent was not entitled to the protection of the commerce clause of the Constitution, and that he could not find refuge behind the right of the individual to order liquor for his own use. The principle there decided is absolutely conclusive upon the question here involved. Advertising, as before stated, is in reality but the solicitation of business, and the principle here involved is identical with that of the *Delamater Case*. In that case the nonresident dealer could not send his agent into South Dakota to solicit business in defiance of state law and seek protection under the commerce clause of the Constitution. In the case at hand, applying the same principle, the nonresident dealer is not authorized to send his agent, whether in person or by newspaper or periodical advertisements, which in effect are the same, into this state, and, by means of the distribution of such newspapers or periodicals containing such advertisements, solicit business in defiance of the act here under review. The *Delamater Case* and this case cannot be distinguished in principle. The question involved is a federal one and one upon which the decision of the United States Supreme Court is conclusive and binding, and the result here may well rest upon that authority. Indeed, that the *Delamater Case* decides in principle the case at hand seems not to be denied by the learned counsel for appellee; but it is insisted that, while that case has not been overruled by that court, yet it is incon-

[State, ex rel. Black v. Delaye.]

sistent and in conflict with subsequent decisions of that court, namely, *L. & N. R. R. Co. v. Cook*, 223 U. S. 70, 32 Sup. Ct. 189, 56 L. Ed. 355, and *Crenshaw v. State of Ark.*, 227 U. S. 389, 33 Sup. Ct. 294, 57 L. Ed. 565.

We are unable to discover that these authorities are at all in conflict with the *Delamater Case*. The *Crenshaw Case* dealt with an act of the state of Arkansas which undertook to regulate the sale of stoves, ranges, etc., and applied a question of interstate commerce to articles of like kind. Cases of like character have frequently been before the court and bear no analogy whatever to the instant case nor to the principles involved in the *Delamater Case*. The case of *L. & N. R. R. Co. v. Cook, supra*, involved the carriage and delivery by the common carrier of liquors shipped from one state to a resident of another state, wherein it was held that the Wilson act did not apply to interstate shipments of liquor until delivery to the consignee. It is clear that this in no wise conflicts with the *Delamater* decision, wherein material distinction is drawn between the right of the individual to receive liquors in the state of his residence, for his own use, and the right of the nonresident liquor dealer to go into that state and carry on the business of soliciting orders for liquor from the residents.

Much argument of counsel is devoted to a criticism of the *Delamater Case*. We do not share in this criticism, but on the contrary consider the opinion entirely sound and logical and as containing a full answer to the arguments here presented against it.

We have examined with much care the following authorities pressed upon our attention by counsel for appellee: *Minnesota v. Barber*, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *People v. Hawkins*, 157 N. Y. 1,

51 N. E. 257, 42, L. R. A. 490, 68 Am. St. Rep. 736: *Haskell v. Cowham*, 187 Fed. 407, 109 C. C. A. 245— as well as in other cases cited in brief. We do not consider them applicable to the case at hand, and they therefore need no separate treatment here.

(7)   Counsel for appellee insist that the *Delamater Case* is in conflict with the decision of this court in *Moog v. State*, 145 Ala. 75, 41 South 166. This we admit.   As a federal question was involved in that case, our court, being without precedent directly in point, was seeking its solution by way of anticipation as to what view that court would entertain upon the subject, as is clearly shown by the opinion.   That case was decided May 9, 1906.   The *Delamater Case* was decided by the Supreme Court of the United States nearly a year later, on March 11, 1907.

Other states have found themselves likewise situated, as, for instance, Iowa.   The Supreme Court of that state, in the case of *McCollum v. McConaughy*, 141 Iowa, 174, 119 N. W. 540, referring to a case decided by it prior to the *Delamater Case*, said: "It is evident * * * that the controlling consideration in reaching the conclusion that the statute was unconstitutional was the interpretation which it was thought the Supreme Court of the United States had given to the interstate commerce clause of the federal Constitution as affecting the validity of the statute, and that if the recent decision had then been announced, and had been considered by this court as applicable to the legislation in question, a contrary decision would have been reached."

Reference may also be had in this connection to *State v. Miller*, 66 W. Va. 436, 66 S. E. 522 Ann. Cas. 604; *State v. Davis*, 84 S. C. 512, 66 S. E. 875; *Hart v.*

[State, ex rel. Black v. Delaye.]

*State,* 87 Miss. 171; *Kirkpatrick v. State,* 138 Ga. 795, 76 S. E. 53; *State of W. Va. v. Adams Express Co.,* 219 Fed. 794, —. C. C. A. —; *People v. Swenson,* 162 Mich. 397, 127 N. W. 302.

As previously stated, a federal question being involved, the decision of the Supreme Court of the United States is final and conclusive, and the *Moog Case, supra,* having been decided prior to the *Delamater Case* and merely in anticipation of what the United States Supreme court would decide, it now becomes necessary, in the light of that authority and following in its wake, to overrule the *Moog Case.*

(8)   While it is insisted by counsel that the anti-advertising liquor law is also void under our Constitution as not being a proper exercise of police power, we are of the opinion that this insistence is so clearly without merit under the authorities as to need but passing notice.   Anti-advertising laws do not appear to be either new to modern times or confined to this state.   Two cases involving the advertisement for sale of lottery tickets are found reported in the decisions of the Supreme Judicial Court of Massachusetts as far back as 1827. See *Commonwealth v. Clapp,* 5 Pick. (Mass.) 42.   And recently the Supreme Court of Michigan sustained a conviction under an act of that state entitled "An act to prohibit certain classes of immoral advertising and to provide punishment for the violation thereof," and which act dealt with advertisements for the cure of venereal diseases and questions of like character.—*People v. Kennedy,* 176 Mich. 384, 142 N. W. 771.   The constitutionality of this act was assailed, but without avail; the court saying, "The act appears to be a reasonable police regulation."   Other cases of interest in this connection are *Fifth Ave. Coach Co. v. City of N.*

*Y.*, 221 U. S. 467, 31 Sup. Ct. 709, 55 L. Ed. 815, and *In re Jackson*, 96 U. S. 727, 24 L. Ed. 877. An act of a somewhat 'similar character to that presented in the *Michigan Case, supra*, was reviewed by the Supreme Court of Tennessee in *Kirk v. State*, 126 Tenn. 7, 150 S. W. 83, Enn. Cas. 1913D, 1239; and a number of cases are cited in the opinion. The case of *Zinn v. State*, 88 Ark. 273, 114, S. W. 227, and *State ex rel. West v. State Cap. Co.*, 24 Okl. 252, 103 Pac. 1021. as well as the *Bass Pub. Co. Case*, supra, dealt with laws of similar character to the one under review, and were unheld as being a proper exercise of police power. In the last-mentioned case the following language found in the opinion is pertinent here:

"The statute in this case is but a part of the legislation of this state upon the subject-matter of the sale and keeping for sale of intoxicating liquors, and is to be construed, so far as its language will fairly and reasonably allow, in harmony with what appears from that legislation to be the legislative policy and purpose."— 104 Me. 292, 71 Atl. 896, 20 L. R. A. (N. S.) 496.

There has long been a statute in this state prohibiting the solicitation of orders for liquors, and which has been applied and sustained by this court.—*Levy v. State*, 133 Ala. 190, 31 South. 805; *Mills v. State*, 148 Ala. 633, 42 South. 816. In the latter case it was said: "The statute is a police regulation, and one act will constitute a violation of it."—Code of 1896, § 5087; Code, 1907, § 7373.

We are cited by counsel to the case of *Eidge v. Bessemer*, 164 Ala. 599, 51 South. 246, 26 L. R. A. (N. S.) 394, which, however, dealt with a question bearing no analogy to that here presented, and nothing therein contained militates against the conclusion we have here reached.

The *Delamater Case* has not only not been overruled by the Supreme Court of the United States, nor its holding shaken by subsequent decision of that court, but it has been cited with approval in *Phillips v. Mobile,* 208 U. S. 472, 28 Sup. Ct. 370, 52 L. Ed. 578, in which case the following expressions are of interest here: "The police powers of a state form a portion of that immense mass of legislation which embraces everything within the territory of a state not surrendered to the general government, all of which may be most advantageously exercised by the states themselves.    *    *    *    The sale of liquors is confessedly a subject of police regulation. Such sale may be absolutely prohibited, or the imposition of license taxes, by which those only who obtain licenses are permitted to engage in it."

The following quotation from the case of *Purity Extract Co. v. Lynch,* 226 U. S. 192, 33 Sup. Ct. 44, L. Ed. 184, also finds application here: "That the state, in the exercise of its police power, may prohibit the selling of intoxicating liquors, is undoubted.    *    *    *    It is also well established that, when a state exerting it recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that, because a transaction separately considered is innocuous, it may not be included in a prohibition, the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government.    *    *    * With the wisdom of the exercise of that judgment, the court has no concern; and, unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would

[State, ex rel. Black v. Delaye.]

be to substitute judicial opinion of expediency for the will of the Legislature. A notion foreign to our constitutional system."

See, also, *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, and *Feibelman v. State*, 130 Ala. 122, 30 South. 384.

The conclusion we have here reached, in the light of the *Delamater Case*, is without any consideration of the recent act of Congress known as the "Webb-Kenyon Bill," passed in March, 1913 (Act March 1, 1913, c. 90, 37 Stat. (U. S. Comp. St. 1913, § 8739) ; Fed. St. Ann. Sup. 1914, p. 208), but which act it must be confessed adds strength and confirmation to the well-reasoned opinion of that case.

The advertisements forbidden by this law are in reality but solicitations for business, and this state, possessing the unquestioned authority under its police power to prevent or regulate the sale of liquors within its borders, has also the authority, under the same police power, to prevent or regulate the carrying on of the accessory business of soliciting orders within the state.

We therefore conclude that the anti-advertising liquor law here under review does not contravene any of the provisions of the state and federal Constitutions, is a proper exercise of the police power of the state, and is valid and now effective throughout the entire state. The law provides for the mode of procedure here followed, and which authorizes injunctive relief as a means of obtaining the end in view. It follows, therefore, in our opinion, that the writ of injunction should have been granted by the learned judge below, and his order denying the same is hereby reversed, and one will be here entered granting the temporary injunction as prayed for in the bill.

Reversed and rendered. All the Justices concur.