(77 South. 758)

STATE v. ADVERTISER CO. (3 Div. 343.)

(Supreme Court of Alabama. Jan. 24, 1918.)

INTOXICATING LIQUORS ☜146(2)—ADVERTISEMENTS OF LIQUORS—WHAT ARE.

It is not a violation of Acts 1915, p. 37, prohibiting the advertisement of intoxicating liquors, or of any person from whom, or the price at which, or the method by which, intoxicating liquors may be obtained, for a newspaper to publish an advertisement signed by the United States Brewers' Association, setting forth that the federal government had recognized the distinction between beer and spirituous liquors, and attempting to popularize beers and light wines as temperance beverages at the expense of distilled liquors, the advertisement not giving any information as to where beer or light wines could be obtained.

McClellan, Somerville, and Thomas, JJ., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill in equity by the State of Alabama against the Advertiser Company, to enjoin the publication of a certain advertisement. From a decree sustaining demurrers to the bill, complainant appeals. Affirmed.

W. L. Martin, Atty. Gen., and L. E. Brown, Asst. Atty. Gen., for the State. Steiner, Crum & Weil, of Montgomery, and Augustus Benners, of Birmingham, for appellee.

ANDERSON, C. J. The state, through its Attorney General, contends that the publication in question (which will be set out in the report of the case) violates the act of 1915, p. 37, commonly known as the anti-advertising act, passed in aid of and connection with a general system of prohibitory laws enacted for the paramount purpose of "promoting temperance and suppressing the evils of intemperance." The act in question prohibits the advertisement by methods there designated, including publication in any newspaper of prohibited liquors or any of them, "or to advertise the manufacture, sale, keeping for sale or furnishing of any of them, or the person from whom or the firm or corporation from which, or the place where, or the price at which, or the method by which the same or any of them may be obtained * * * or to circulate any price lists, order blanks, or other matter for the purpose of inducing or

securing orders for such liquors"; while section 2 deals with an advertisement or notice containing the picture of a brewery or receptacles represented as containing any of the prohibited liquors. This statute was manifestly designed to prevent the citizens of Alabama from being informed by the method or devices mentioned from being reminded or informed how, where, or from whom they could order liquors or beverages, and not to throttle the press so as to prevent the publication of editorials or communications discussing the prohibition or liquor question, and wherein not even a hint is given the citizens of Alabama of the name or address of a dealer or brewer or the name or brand of any liquors or beverages. The publication in question does not convey the slightest information to any citizen of the state that would aid him in ordering or securing prohibited liquors. It is a mere argument against distilled liquors, and in favor of light beer and wines as compared therewith, and expresses the purposes of the "United States Brewers' Association" to divorce itself from the distillers and what their attitude is and shall be in the future with reference to national and state laws designed to promote temperance; and it is not even signed by any particular brewer or dealer. It is no doubt true that the article is perhaps an attempt to popularize light wines and beer at the expense of distilled liquors, but it does not designate any brand or dealer, or give other information that would apprise any citizen of the state how or where he can get said light wines or beer. It would require a rather strained construction of the statute to bring the publication in question within its prohibitive influence either in letter or spirit. It is in the nature of a mere political propaganda, and is no more an advertisement of prohibited liquors than would be any article or communication that discusses the merits or demerits of intoxicating liquors or beverages or the policy of the anti-saloon league or the distillers or brewers.

The trial court did not err in sustaining the respondent's demurrer to the bill of complaint and in dissolving the injunction, and its judgment is affirmed.

Affirmed.

MAYFIELD and SAYRE, JJ., concur. GARDNER, J., concurs in conclusion. McCLELLAN, SOMERVILLE, and THOMAS, JJ., dissent.

GARDNER, J. (concurring). While I concur in the result of affirmance in this cause, yet I do not care to commit myself to all that is said by way of reasoning in the foregoing opinion.

The act in question is highly penal, and should be strictly construed, and, before giving it application to the concrete case, the

judicial mind should be clearly convinced that the publication in question comes within its influence.

I am of the opinion the article here involved is in the nature of a political propaganda only, and not such an advertisement as to come within the prohibition of the act in question. I am not prepared to say, however, in order to bring an advertisement within said act, that it would be necessary that the name of the prohibited beverage should appear, or the place from whence it might be obtained. While I am rather inclined to a contrary view, there is no reason for reaching any definite conclusion thereon. I therefore concur in the result.

McCLELLAN, J. (dissenting, with whom Justices SOMERVILLE and THOMAS concur). In virtue of the authority created by section 3 of the act adopted February 10, 1915 (General Acts 1915, pp. 37–39), the state, by its Attorney General, filed this bill for an injunction against the Advertiser Company, a corporation, and others as its officers, agents, and employés. The prayer is that the respondents be enjoined from publishing or circulating any newspaper, periodical, or any written or printed matter in which shall appear any advertisement of intoxicating liquors or beverages, or for the manufacture, sale, keeping for sale, or furnishing of any alcoholic, spirituous, or malt liquors, such as brandy, * * * beer or other intoxicating liquors or beverages. The court below held that the bill was without equity, and dissolved the temporary injunction that had been issued pending the hearing. It is alleged in the bill that the respondents publish and circulate a newspaper in the city of Montgomery, Ala., known as the Montgomery Advertiser; that there had been theretofore published in this newspaper, under date of Tuesday, November 27, 1917, an advertisement of intoxicating liquors, viz. beer and light wines, exhibiting therewith a single sheet of the Montgomery Advertiser, the pertinent part of which will be hereinbelow reproduced. It is further alleged that the respondents are threatening to publish a series of advertisements of intoxicating liquors or beverages "such as are herein complained of." A number of interrogatories were propounded to the respondents by the bill; but the stage at which the cause was disposed of by the court below precluded any recourse to these interrogatories in aid of the full information of the court in considering and determining the propriety of its action with respect to publications remaining to be made as a part of the series of advertisements referred to in the bill. For the purposes of this review, the publications to which the bill referred as being threatened must be regarded as being like, similar to, that made Exhibit A to the bill in this cause. The matter to which the bill has reference and which it makes Exhibit A thereto is, together with the date line of the newspaper, as follows:

"The Montgomery Advertiser, Tuesday Morning, November 27, 1917.

"The Brewers to the Public.

"Our Federal Laws, now for the first time in our history, absolutely prohibit the distillation of ardent spirits—such as whiskey, brandy, gin and the like. In so doing they make a clear distinction between distilled spirituous liquors and mild beverages—such as beer and light wines.

"This distinction sets a precedent in our national treatment of the question of Intemperance. It is in line with the teachings of history and of science. It is in harmony with the experience of other countries now at war. It is through such a distinction that the real solution of this vital problem will be found.

"Inasmuch as the brewers have reduced the alcoholic content of beer until it is today only fractionally in excess of 3 per cent. they have earned the right to call their product a True Temperance Drink. Yet, in general popular opinion, it is still associated with ardent spirits.

"The true relationship of beer is with light wines and soft drinks—not with hard liquors.

"For this false mental association the brewers are largely responsible. Keen competition in the early days of the brewing industry, before the perfection of modern bottling methods, led the brewers as individuals to encourage the establishment of saloons, which were at that time the only agencies through which their product could be lawfully sold. This unwise individual action on the part of many led to an undue multiplication of the saloon—a form of retail distribution which dealt not only in malt beverages but also in intoxicating liquors, and established a business affiliation that has since created the false mental association.

"Thus our product has been unjustly and improperly linked with those influences—over which we have had no control—that have actually promoted Intemperance.

"For years we have hoped, with the wine growers, that some factor might intervene which would enable us to sever, once and for all, the shackles that bound our wholesome products—light wines and beer, the handmaidens to True Temperance—to ardent spirits in popular mental association and actual business practice. The Federal enactment prohibiting the distillation of spirituous liquors has broken those chains at last.

"Freed now to speak for the great moral truth of Temperance that we have long realized was ours—heartened by the action of Congress and the President—we welcome the opportunity that is thus afforded us to promote True Temperance. Further, we pledge ourselves to co-operate with the spirit of the law by adding our utmost efforts to dissociate beer from distilled liquors in every way, in popular thought and in the saloon.

"Thus will the Federal laws and our practice operate to eliminate the evils of Intemperance and to place our country upon a basis of Temperance—*Real* Temperance, which means sobriety and moderation: *not* Prohibition, which has proved a fallacy and a failure.

"The United States Brewers' Association."

Under the act, above noted, entitled "An act to further promote temperance and suppress the evils of intemperance; to prevent the advertisement of or solicitation of orders for * * * malt liquors, such as * * * beer and other intoxicating liquors and beverages, * * * prohibited by the laws of Alabama to be manufactured, sold or otherwise disposed of in this state; to provide for the

removal of such advertisements in defined cases, and to provide for the prevention of the continuation and repetition of the acts hereby made unlawful, * * *" it is provided in section 1 of said act as follows:

"Whereas, it is the public policy of this state to discourage the use and consumption of prohibited liquors and beverages, and to secure the strict enforcement of the law against the manufacture, sale, keeping for sale, or other disposition thereof within this state; that is to say, alcoholic, spirituous, vinous or malt liquors, such as brandy, whisky, wine, rum, gin, and beer, and other intoxicating liquors and beverages, and all the other liquors, liquids, and beverages prohibited by the laws of Alabama to be manufactured, sold or otherwise disposed of in the state. Therefore, it is hereby made unlawful, (1) to advertise upon any street car, railroad car or other vehicle of transportation, or at any public place or resort, or upon any sign or billboard, or by any circulars, posters, price lists, newspapers, periodicals or otherwise within this state, said liquors and beverages, or any of them, or to advertise the manufacture, sale, keeping for sale or furnishing of any of them, or the person from whom or the firm or corporation from which, or the place where, or the price at which, or the method by which the same or any of them may be obtained; (2) to circulate or publish any newspaper, periodical, or other written or printed matter in which any advertisement in this section specified shall appear, or to permit any sign, or billboard containing such advertisement to remain upon one's premises; or to circulate any price lists, order blanks or other matter for the purpose of inducing or securing orders for such liquors, liquids and beverages, or any of them, no matter where located."

Section 4 of this act provides penalties for its violation. It is a penal statute, and must therefore be strictly construed. It is to be observed that, in order to effect the violation or the continuation or repetition of the violation of this statute in the particular chiefly involved on this appeal, there must be an advertising of malt liquors, beer; and hence it is that the question in contest is whether the matter of Exhibit A contains an advertisement of beer within the purview of the quoted section of the act. The constitutionality of the act was approved by the unanimous judgment of this court in State ex rel. Black v. Delaye, 193 Ala. 500, 68 South. 993, L. R. A. 1915E, 640, following the apt authority of the Supreme Court of the United States afforded by its deliverance in Delamater v. South Dakota, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724, 10 Ann. Cas. 733.

The Legislature enacted a number of statutes relating to the prohibition of the traffic and manufacture of forbidden liquors. These statutes are in pari materia; and are to be considered together. Reiterating the doctrine of Carl's Case, 87 Ala. 17, 6 South. 118, 4 L. R. A. 380, and Marks' Case, 159 Ala. 71, 48 South. 864, 133 Am. St. Rep. 20, among others, it was said in Southern Express Co. v. Whittle, 194 Ala. 406, 419, 69 South. 652, 656 [L. R. A. 1916C, 278], that:

"The object and purpose of all our laws governing the subject of intoxicating liquors is 'to promote temperance and to prevent drunkenness. * * * The evil to be remedied is the use of intoxicating liquors as a beverage. * * *'"

In the preamble to the act of 1915, forbidding the advertisements defined in section 1 thereof, the public policy of this state was declared by the Legislature to be "to discourage the use and consumption of prohibited liquors and beverages." Beer, a malted or fermented liquor (Sarlls v. U. S., 152 U. S. 570, 14 Sup. Ct. 720, 38 L. Ed. 556), even though containing an alcoholic content (to quote from the publication) "only fractionally in excess of 3 per cent.," is among the liquors and beverages forbidden to be manufactured, sold, or otherwise disposed of in this state. The Reed Amendment (U. S. Statutes at Large, vol. 39, pt. 1, p. 1069, reproduced in the statement by the reporter to State v. Sou. Exp. Co., 75 South. 344[1]) forbids to be deposited in or carried by the mails of the United States, or otherwise through the postal service, any advertisement of spirituous, vinous, fermented, or other intoxicating liquors. Recurring to our act of 1915, it is to be observed that, in pursuit of the effectuation of the public policy of this state, "to discourage the use and consumption of prohibited liquors and beverages," the lawmakers classified both the means and subject of advertising spirituous, vinous, or malt liquors or beverages. It forbids the advertisement of said liquors and beverages through newspapers, periodicals, etc.; it forbids the advertisement of the manufacture, sale, keeping for sale, or furnishing of said liquors or beverages; and, disjunctively, it forbids an advertisement of said liquors or beverages so as to inform or notify "from whom or the firm or corporation from which, or the place where, or the price at which," said liquors or beverages may be obtained; and, also, it forbids the publication or circulation of any newspaper in which any advertisement of said liquors and beverages appears; and, also, it forbids the circulation of any price lists, order blanks, or other matter for the purpose of inducing or securing orders for such liquors and beverages, or any of them, no matter where located. If an advertisement, within the purview of this act, is circulated, published, or posted, it is forbidden, under penalty, by the act; and the state of Alabama may, under section 3 of the act, enjoin a continuation or repetition of the unlawful act. The act employs, somewhat interchangeably, the terms "to advertise" and "advertisement." The verb "to advertise," as used in this act, signifies:

"To give notice of; to inform or apprise; to notify; to make known; * * * to give public notice of; to announce publicly, especially by a printed notice." Webster's New Int. Dict.

The noun "advertisement" has, of course, a similar significance. An advertisement, at least ordinarily, if not necessarily, comprehends these elements: (a) An advertiser; (b) the medium through which the advertisement is disseminated; (c) the subject of the advertisement; and (d) the object of its publication, circulation, or posting, viz. the public,

[1] 200 Ala. 31.

so to speak. The accepted definition of advertise, as well as the universal general understanding of the art or profession of successful advertising, confirms the correctness of this analysis. When the act or process of advertising, within the contemplation of Alabama's anti-advertising act of 1915, is considered in connection with the purposes and provisions of that enactment, it is entirely clear that the advertisement forbidden must be of one or more of the prohibited liquors and beverages referred to in this act. In view and in consequence of this association of purpose and provision in the act, it is equally clear that neither scientific nor political abstract discussions of the wisdom or propriety of the use of intoxicants or of the governmental promulgation of statutes governing or pertaining to the manufacture or sale of intoxicants—when employed in good faith and not in consequence of a design to evade the statute against advertising—are within the prohibition or condemnation of Alabama's anti-advertising act; but any other publication, through the means defined in the anti-advertising act, which tends to encourage the use or consumption, in any degree, of prohibited liquors or beverages is a character and method of advertising forbidden by the anti-advertising act.

Whether the subject-matter of Exhibit A, quoted hereinabove, is within the prohibition of the statute against advertising of the defined character, depends, of course, upon a view thereof; and, in some degree, a dissection thereof. Recurring to the stated elements of an advertisement, there can be no doubt that the medium through which the publication in question was and is to be disseminated, viz., a newspaper, and the object to be reached thereby, viz., the public, are disclosed in and by the exhibit quoted ante. A newspaper was and is to be the medium, and the communication, so to speak, is addressed "to the Public." It is equally plain that the first element of an advertisement, viz., an advertiser, is shown by the publication to be the brewers. The advertiser is referred to in the address as the "Brewers" and in the signature as the "United States Brewers' Association." A brewer is "one whose business or occupation is to prepare malt liquors." Webster's New Int. Dict. In U. S. Comp. Statutes 1916, Anno., vol. 6, § 5971, a brewer, within the contemplation of the Internal Revenue Laws, is thus defined:

"Every person who manufactures fermented liquors of any name or description for sale, from malt, wholly or in part, or from any substitute therefor, shall be deemed a brewer."

So that this publication is promulgated to the public by the brewers of beer through their national association, employing the medium of a newspaper, by or for or in authoritative behalf of those who are the manufacturers, for purposes of sale of liquors fermented from malt. The obvious purpose of the publication is to popularize the consumption of their product as a "true temperance drink." , The manifest effort is to induce people who favor what the brewers term "real temperance" to consume what the brewers denominate as "our wholesome product—light wines and beer', the handmaidens to true temperance." It is true the publication reprehends what it terms the former association "in popular thought and in the saloon" of their product, viz. beer, with ardent spirits; but by contrasting their product with the product of the distillers, ardent spirits, the evident design was to appeal to those who would prefer the consequences or the satisfaction of the asserted lesser effective of the two classes of alcoholic beverages and to thereby promote the popularity and acceptance and consumption of the brewers' product. This idea is very forcefully inculcated through these expressions in the publication:

"Thus our product has been unjustly and improperly linked with those influences—over which we have had no control—that have actually promoted intemperance. * * * Freed now to speak for the great moral truth of temperance that we have long realized was ours—heartened by the action of Congress and the President—we welcome the opportunity that is afforded us to promote True Temperance."

The publication admits of no doubt that the brewers' view of the means whereby "to promote true temperance" is to be found in their product, which is denominated in the publication to be "a true temperance drink." In the last lines of the publication reference is made to a "real temperance," evidently with respect to intoxicants; and in elucidation of the brewers' view of "real temperance" it is said that it means sobriety and moderation; doubtless intending to inculcate and disseminate the idea that the moderate use of beer will maintain sobriety, thereby necessarily presenting to the public consideration, in palpable violation of the anti-advertising act, the thought that even the consumption, in moderation, of the alcoholic product of their manufacture would establish or maintain a state of "real temperance." The publication admits of no doubt of its concrete meaning and effect. It was designed to promote the use and consumption of the product of the manufacture of the brewers: First, by declaring their view that its less harmful alcoholic content exempts it from classification with ardent spirits, which the publication avows "actually promoted intemperance"; and, second, by affirmatively urging, through a widely circulated newspaper, the use of the product in the manufacture of which they are engaged as a means to establish "real temperance." The publication does not purport to be a scientific discussion of the effect upon the individual or the social order of the consumption of alcoholic liquors or beverages. It has in it a few expressions that would,

perhaps, be appropriate to a publication devoted to a discussion of the historical and scientific aspects of the liquor evil; but they are few, and are, in this publication, employed with the effect, if continued to be published, of promoting the consumption of the alcoholic commodity manufactured by the brewers. It is impossible to read the publication, addressed by "The Brewers to the Public," and signed by the "United States Brewers' Association," a communication by the manufacturers of beer to the public, and deduce from it the idea that it is an utterance, in the abstract, upon the historical and scientific phases of the liquor evil.

It is insisted that this publication is of a purely political nature. Manifestly, to avoid the violation of the anti-advertising act a publication must be of a purely political nature, since the act would be violated even though a part of an advertisement, within its condemnation, was "in the nature of a mere political propaganda," or "in the nature of a political propaganda only." Certainly, a publication could not be removed from the condemnation of the anti-advertising act by the simple process of incorporating in it matter of even a purely political nature. The contention that the publication is of a purely political nature only must be mainly based, if at all, upon the closing phrases of the publication, wherein it is declared that "prohibition * * * is a fallacy and a failure." The right of the manufacturers of beer, the brewers of the United States, to publish their opinions of the state's policy of prohibiting the manufacture and traffic in their product, and even to press for the annulment of that policy, cannot be doubted. There is nothing in this or any other statute forbidding the expression in this state of any one on any question of a governmental or political nature. That this publication is not an effort to exercise this right of the brewers or of their association to combat, purely politically, the prohibitory laws of this state is so obvious that the mere use of a few words condemning prohibition as "a fallacy and a failure" could not render even debatable the question of the permissibleness of this publication under Alabama's anti-advertising act. The allusion in the publication to the preference the brewers assert should be accorded their product over the product of the distillers, because of the reduced alcoholic content of the brewers' product, could not serve to relieve the publication of its offense to Alabama's anti-advertising act. If the mere process of contrasting the desirability of their product with the product of the distillers should be accepted as exempting this publication from the condemnation of the anti-advertising act, no sound reason could be given for denying to one brewer the right to commend his product over that of another brewer; and fair logic would exact the conclusion that the brewer would escape the condemnation of the act by contrasting his view of the desirability of his product with water, milk, or grape juice. While this publication carries an emphatic condemnation of the brewers' former associate in the manufacture and sale of alcoholic liquors and beverages, that fact cannot exonerate the publication from the effect of the anti-advertising act.

It is not at all indispensable to the constitution of an advertisement under this act that the published matter should contain information of the place where or the dealer from whom the article or commodity may be purchased or procured. The anti-advertising act does prohibit, disjunctively, that form of advertising; but, just preceding the disjunctive which, itself, precedes the inhibition against an advertising that furnishes information of the place where or the dealer from whom the article or commodity may be purchased or procured, the act expressly prohibits an advertisement of the manufacture of the liquors and beverages described therein. According to the very terms of the act, a publication is an advertisement if it gives notice to the public that one, or more, of the liquors and beverages described in the act is or are manufactured. The obvious legislative purpose was to close every possible avenue of the advice of the public, with respect to the liquors and beverages described in the act, through the means or medium of advertisements; and in effecting this purpose the lawmakers have expressly forbidden the advertisement in Alabama of even the fact that such liquors and beverages are manufactured. This publication, sourced as it is, does advertise the fact, not only that a forbidden liquor is manufactured by the brewers, but also, quite logically, affirmatively urges its consumption. The respective opinions of Chief Justice ANDERSON and Justice GARDNER do not disclose any reference to this feature of the anti-advertising act. Indeed, the concurrence of Justice GARDNER is so qualified as to avert an agreement with Chief Justice ANDERSON'S opinion in its interpretation of the anti-advertising act, thus leaving the construction of the act undetermined by a constitutional quorum of this court.

If a constitutional quorum of this court had approved the view expressed in the opinion of Chief Justice ANDERSON, that a publication is not an advertisement within the prohibition of the anti-advertising act that "does not designate any brand or dealer, or give other information that would apprise any citizen of this state how or where he" could get liquors or beverages described in the anti-advertising act, such decision could only obtain through the ignoring of numerous provisions written in the act.

The suggestion that the publication cannot be reasonably interpreted as extending an invitation or as expressing a solicitation to the public to buy or to consume the product of the brewers' manufacture is, in our opinion,

without merit. This suggestion cannot be accepted without assuming, in the face of the plain import and effect of the subject-matter of the publication, that the manufacturers of a commodity, produced for sale and consumption, have not evinced in this instance an unmistakable purpose to induce and to popularize the consumption of their product, and thereby to promote its sale. It is inconceivable that the brewers, through their national association, would promulgate such a publication without the entertainment of any hope of financial reward through its sale.

Our opinion is that the court erred in dissolving the injunction.